Argued March 4, affirmed March 17, 1965

# BURNS *v.* A. G. C. AND LOCAL 701 HOISTING AND PORTABLE ENGINEERS HEALTH AND WELFARE FUND ET AL

400 P. 2d 2

*James W. Lock,* Gresham, argued the cause for appellant. With him on the brief were McAllister, Burns, Gustafson & Lock, Gresham.

*Clifford D. O'Brien,* Portland, argued the cause and filed a brief for all respondents except Bankers Life Co.

*Cleveland C. Cory,* Portland, argued the cause and filed a brief for respondent Bankers Life Co.

Before SLOAN, Presiding Justice, and GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

GOODWIN, J.

The sole question in this case is whether, at the time of his death, the plaintiff's husband was covered by a policy of group life insurance. The trial court held that the deceased was not covered, and entered judgment for the defendants. The plaintiff appeals.

The insurance was written as a part of the health and welfare program which had been negotiated between the various defendants for the benefit of members of Local 701, Hoisting and Portable Engineers. ■ The plan contemplated that term life insurance for employees would be purchased by a fund created by payments by the employers of $.13 per hour worked by each employee. Under the plan the trustees of the fund forward to the insurance carrier a lump-sum premium payment. Insurance is placed in force for each workman whose name appears on a list that the trustees prepare to accompany the payments. At the

time of his death, the deceased was not listed as an insured. If, however, according to the terms of the insurance agreement the deceased was entitled to insurance, the failure of the list to show his name would not affect the plaintiff's rights. The question for decision is whether the omission of the name of the deceased from the list of insured workmen was justified.

The relevant paragraphs of the Union's health-and-welfare handbook read as follows:

"1. Each employee-member of Local 701 (and eligible dependents, if any) will be insured as follows, provided he is able and available for work on such effective date:

"(a) on the 1st of the 2nd month following accumulation in his account of 150 or more work-hours within a consecutive 3-month period:

"(b) all hours reported will be credited to the employee-member's account but the maximum number of hours to his credit for insurance purposes will be 700.

"2. Continuance of insurance:

"(a) 100 hours will be deducted from the employee-member's account for each month he is insured. He will continue to be insured so long as he has 100 or more hours in his account to a maximum of 7 consecutive months following cessation or interruption of active work-hours. If his account becomes inactive any balance therein will then revert to the Fund, or

"(b) he may continue his insurance for 4 months following termination for lack of hour-credits in his account by payment of $17.55 per month to the Administrator by the 10th of the month first following such termination.

"3. Reinstatement of insurance:

"(a) a previously insured employee-member will again be insured on the 1st of the 2nd month

following accumulation of 150 or more work-hours in a consecutive 3-month period.

"4. An effort will be made to advise employee-members when their insurance is effective or terminates. They or anyone properly concerned should contact the Administrator for this information. Collect calls or telegrams will not be accepted."

The evidence in the trial court revealed that the deceased had worked 56 hours in April, 1961, 36 hours in May, and 65 hours in June, for a total of 157 hours. According to the above-quoted provisions, therefore, he became eligible for insurance on the first day of August, the second month after he had accumulated 150 work hours within a three-month period. He was, accordingly, reported by the trustees as an insured for the month of August.

For the first month's insurance, the workman's work-hours' credit "account" was reduced by 100 hours sometime in August, 1961. When the 100 hours for his August insurance were charged against his account, the workman's credit for hours dropped below 100. The account then had 57 hours remaining from the original 157 hours.

During the month of July, 1961, the deceased worked 24 hours. If we assume that sometime during August the workman's employers reported to the trustees the hours he worked in July, the trustees would have credited the deceased's account with 24 more hours, for a total of 81 hours. In any event, on August 31, the balance in the workman's account was below 100 hours.

According to the plan, as outlined by the testimony, the workman to remain insured must maintain an accumulated total, or a reserve, of at least 100 hours in his account. (In the alternative, he may pay

$17.55 per month pursuant to Section 2(b) of the handbook.) Any time a workman's net balance of "insurance-hours" drops below 100, the trustees cancel his coverage, i.e., refuse to renew it for the next month, unless the workman elects to continue his insurance by making the cash payments indicated in paragraph 2(b).

If a workman allows his account to become inactive, insurance can be reinstated only after he has again accumulated 150 hours of insurance credit. The most damaging effect of an account becoming inactive, however, is the loss to the workman of his accumulated credits. This loss occurs whenever the accumulated credits drop below 100. Paragraph 2(a).

In the case at bar the workman did not make any cash payments to avoid the loss of coverage. The administrator of the fund, representing the trustees, found that the account on August 31, 1961, did not contain sufficient work credits to entitle the workman to automatic coverage for September. The August reports from employers would not, in the ordinary course of business, be in the hands of the trustees until some time in September. Consequently, the administrator terminated coverage at the end of August because the account had fallen below 100 hours as of the end of that month.

Computation of a workman's account necessarily was limited to the hours shown in reports for the latest reported period, and could not include the actual hours he may have worked during the current month, which were not yet reported. Accordingly, eligibility for insurance was based solely upon the hours shown in the workman's account. This balance ordinarily ran about one month behind the actual hours worked.

Termination of coverage, as authorized under the

insurance agreement, eliminated the 57 hours remaining in the workman's account from his original 157 hours. Since the workman worked 24 hours in July, 69 hours in August, and 243½ hours in September, he had a new three-month total of 336½ hours which made him eligible again for coverage for November. He died, however, in October.

The plaintiff contends that the workman was entitled to insurance during the month of October. The plaintiff's contention is that the insurance handbook is so confusing that it amounts to an ambiguous instrument, which must be construed by this court.

The handbook may be confusing. It is not, however, ambiguous in the literal sense that it is equally susceptible of two meanings. The language appears to mean what the defendants claim that it means. The plan is a group-insurance plan paid for by the employers, not by the workman. Employers report each month the hours worked during the previous month by employees. With the report, the employers remit to the trustees $.13 per hour. In due course, the trustees pay the insurance carrier for the term insurance for such workmen as the trustees consider to be eligible under the agreement.

■ The insurance was never bargained for between the insurer and the workman, so there is no need to consider whether the agreement was, or could have been, misleading to a given workman. Apparently the contract was not misleading to the trustees, who acted on the workman's behalf. The trustees take the same position in this litigation that the insurer takes. While we have no quarrel with the plaintiff's citation of authorities which hold that ambiguities in an insurance agreement will be liberally construed in favor of

the insured, these authorities are beside the point in the case before us.

■ The plaintiff also argues, in support of recovery in this case, that there is a forfeiture of his accumulated insurance credits under the contract, and that the forfeiture is bad. If the forfeiture of 57 hours at the end of August was void, the plaintiff contends that the workman's account should be recomputed to show that on September 1, 1961, the workman would have had 150 hours of credit in his account. If the plaintiff's theory were adopted, the workman could have been deemed insured for the month of October. There is no more reason, however, for arbitrarily declaring the forfeiture clause invalid in this case than there would be in any other kind of a situation where one may lose a contractual advantage by his failure to meet other conditions of the contract.

To reach the result desired by the plaintiff, the administrator would have to disregard the contract and compute specially a given workman's insurance hour-credits. Presumably the administrator would need to do this each time it was discovered that the routine monthly computation used for the general membership of the union would result in a loss of insurance unless unreported hour-credits could be brought in to save the workman's insurance. One way the individual service of accounts now being suggested by the plaintiff could be accomplished would be for each workman to furnish the trustees the names of each employer for whom he had worked at any time during each month so that the employers could be canvassed for insurance information prior to the regular reporting date. The only other way this individual service could be furnished would be by requiring weekly or daily reports from employers.

■ To avoid the difficulties involved in individual servicing of accounts, which is alien to the group-insurance scheme, the contract requires that the workman, to remain insurable, must maintain a "reserve" of not less than 100 hours. When the reserve drops below 100 hours, there is no insurance for the next succeeding month unless the workman elects to keep it in force by a cash payment.

In the month of August, no matter how the workman's account is computed, or no matter when during August the 100 hours were deducted, his reserve dropped below 100. The hours he actually worked during August were of no help, as they would not be reported until some time in September. Accordingly, the account had insufficient reserves to cover the situation. Under the contract the trustees were entitled to treat the workman's account as "inactive." The trial court properly held that the insurance sought in this case unfortunately was not in force at the time it was most needed.

Affirmed.