Argued October 9, affirmed October 25, 1967.

# REED, *Appellant, v.* COMMERCIAL INSUR-ANCE COMPANY, *Respondent.*

432 P. 2d 691

*Maurice V. Engelgau,* Coquille, argued the cause and filed the brief for appellant.

*Jack L. Hoffman,* Portland, argued the cause for respondent. With him on the brief were Pendergrass, Spackman, Bullivant & Wright, Portland.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and WOODRICH, Justices.

WOODRICH, J. (Pro Tempore).

This is an action on an insurance contract covering plaintiff's tractor. The court tried the case without a jury and found for the defendant on the ground that plaintiff's action was not brought within the 12-month limitation provision of the insurance contract. Plaintiff on trial asserted, but did not plead, that defendant was estopped from relying on the limitation provision. The trial court found against the plaintiff on this contention and plaintiff assigns this ruling as error.

The insured tractor was damaged when it proceeded unattended into a log pond during the course

of a dredging operation. The occurrence took place when plaintiff's policy was in effect, but the policy contained a limitation provision that "No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in a court of law or equity, unless the same be commenced within twelve (12) months next after the discovery by the Assured of the occurrence which gives rise to the claim * * *." Plaintiff was present on March 12, 1965, when the tractor submerged. He "discovered the occurrence" on that date. Plaintiff did not file this action until July 19, 1966, more than the 12 specified months after the discovery of the occurrence.

In his amended complant, plaintiff alleged that he performed all conditions upon his part to be performed *except as waived* by defendant. Defendant pleaded the contract limitation in its affirmative defense. Plaintiff filed a reply generally denying the affirmative matter alleged in the answer, except plaintiff admitted the insurance contract as set out in defendant's answer. Plaintiff did not plead an estoppel either in his amended complaint or in his reply.

We have held that one seeking the benefit of an estoppel must plead the facts out of which an estoppel arises. *Walker v. Fireman's Fund Ins. Co.,* 114 Or 545, 234 P 542 (1925); *Haun v. Martin,* 48 Or 304, 86 P 371 (1906).

Plaintiff could argue that he was misled in framing his pleadings by the use of the term "waiver by estoppel" in the case of *Kimball v. Horticultural Fire Relief,* 79 Or 133, 154 P 578 (1916). The *Kimball* case holds that where an amended complaint purports to allege "waiver" of a 12-month contract limitation provision *and also alleges facts from which an estoppel would arise,* the trial court was justified in treating

the issue of "waiver by estoppel" as a fact question. The plaintiff in the instant case did not allege facts in his complaint or reply that would put defendant on notice concerning the claimed estoppel, so the instant case is distinguishable from the *Kimball* case. Notwithstanding that the court uses the term "waiver by estoppel" in the *Kimball* case and other cases, [see e.g., *Fagg v. Massachusetts B. & I. Co.*, 142 Or 358, 19 P2d 413 (1933)] we feel that the term "waiver by estoppel" is confusing and tends to blur the useful distinction between "waiver" and "estoppel." The "waiver by estoppel" term in our previous cases has always been applied in estoppel situations and should be understood to refer to estoppel and not waiver.

Because the plaintiff has failed to allege any facts giving rise to an estoppel, the estoppel issue was not properly before the court. *Abrahamson v. Brett,* 143 Or 14, 21 P2d 229 (1933). The trial court correctly ruled that the action was barred by the 12-month limitation provision of the contract.

As mentioned earlier plaintiff in framing his pleadings may have been misled by the term "waiver by estoppel" in our previous cases, which we now have clarified, so we prefer to rest our decision in the instant case on an additional ground.

Plaintiff was charged with the burden of proving that the damage to his tractor resulted from a peril covered in the policy. *Jarvis et ux v. Indemnity Ins. Co.*, 227 Or 508, 363 P2d 740 (1961). The tractor was insured against "upset or overturn" among other perils. Plaintiff contends that the tractor "upset" within the meaning of the policy.

The only evidence of the occurrence was offered by plaintiff. He was engaged in the sand and gravel

and excavating business. On March 12, 1965, plaintiff was dredging the mud and bark from a log pond owned by a plywood manufacturing company. Plaintiff used the 22,000-pound tractor in question to anchor a block through which a light steel line was passed. The line in turn was fastened to the drag bucket and was the means whereby the bucket was returned after being emptied on the side of the pond opposite the tractor. The tractor was parked unattended on the top of the dike of the log pond in a direct line with the light cable. At this point, the top of the dike was about 10 or 12 feet across. The pond was about 9 or 10 feet deep and the dike was about 2 feet higher than the water level in the pond. The slope of the dike into the pond was about 45 degrees. Plaintiff was working on the opposite side of the pond from the tractor and looked up just as the smokestack on the top of the tractor disappeared beneath the water. The tractor was not visible in the muddy pond water after it was completely submerged and no one saw the descent of the tractor into the water. There was no direct evidence of the tractor's position after the descent. Plaintiff and his employe observed the stack on the top of the tractor as it was submerging. The tractor was pulled out of the pond on the side opposite its entrance into the water and at the time of its removal the tractor was right-side up. The bank of the pond was caved in at the point of entry and the tractor apparently was on its tracks at the time it descended the bank.

An insurance contract having been drafted by the insurer is to be construed liberally in favor of the insured. *Burns v. A.G.C. and Local 701*, 240 Or 95, 400 P2d 2 (1965); *Finley v. Prudential Ins. Co.*, 236 Or 235, 388 P2d 21, 4 ALR3d 1161 (1963). No Oregon

cases have defined the term "upset" so we look to cases from other jurisdictions. At a minimum, these cases seem to require a loss of equilibrium, to some extent, as an essential ingredient of "upset."① The evidence indicated that plaintiff's tractor began and ended upright. There was no evidence as to the posture of the tractor in the interim except for the precise moment of total submergence. It descended a 45 degree slope and when last seen the top of the tractor was uppermost. There was no evidence from which the trier of

---

① In defining the coverage of a policy insuring a vehicle against loss from "overturning" or "upset," courts in other jurisdictions have, at the least, required that the damage result from a temporary loss of equilibrium. Carl Ingalls, Inc. v. Hartford Fire Ins. Co., 137 Cal App 741, 31 P2d 414 (1934); Orlando v. Manhattan Fire & Marine Ins. Co., 266 App Div 319, 42 NYS2d 228 (1943); Ferguson v. Farm Bureau Mut. Ins. Co., Inc., 171 Kan 679, 237 P2d 234 (1951).

A more stringent test as to what constitutes a "loss of equilibrium" was formulated in Jack v. Standard Marine Ins. Co., 33 Wash2d 265, 270, 205 P2d 351, 8 ALR2d 1426 (1949), as follows: "* * * Once a vehicle loses its equilibrium and the overturning process has commenced and proceeded beyond the power of those in charge of the vehicle to stop its progress * * * It should be held that the vehicle had overturned or upset * * *." This test has been applied in most of the cases involving the question of coverage for damages from upset. In Espree v. Western Pioneer Ins. Co., 159 Cal App2d Supp 875, 324 P2d 749 (1958), the court held that a dump truck had upset when it lost its equilibrium while unloading a load of fill dirt and would have tipped over completely had not one corner of the truck bed come to rest on soft earth. In Grimh v. Western Fire Ins. Co., 5 Wis2d 84, 92 NW2d 259 (1958), where a tractor had broken through the frozen surface of ground in a marshy area into mud and water, nosed down, tipped to the right, and stuck in the mud, the court held that it was a factual question whether the tractor would have returned to its normal position but for the mud and ground around it; whether the plaintiff could recover turned on the resolution of that question. In American Liberty Insurance Company v. Moore, 276 Ala 634, 165 S2d 724 (1964), the court held that there was no "upset" when a trailer, partly raised by a hoist which the hoist operator stopped after he noticed one side of the trailer had bowed out, had not tipped sufficiently to lose its equilibrium and the hoist operator had not lost control of it. See 7 Am Jur2d, Automobile Insurance § 62.

the facts could determine how steep an embankment will cause equipment of this kind to lose its equilibrium. This is not a matter of such common knowledge that the court may take judicial notice thereof. The tractor was aligned with the direction of the cable pull rather than at right angles to the pull. We find that there was no evidence of even minimal loss of equilibrium, i.e., tilting. Hence, even under a liberal interpretation of "upset" plaintiff has not sustained his burden of proof.

In view of our holding in the above two grounds, we find it unnecessary to consider the policy provision excluding coverage where the tractor is used "in connection with logging, sawmill or wood working operations."

Affirmed.