Argued May 10, affirmed September 6, petition for rehearing
denied October 1, 1974

FARLEY, *Respondent, v.* UNITED PACIFIC
INSURANCE COMPANY, *Appellant.*

525 P2d 1003

*William L. Hallmark,* Portland, argued the cause for appellant. With him on the briefs were McMenamin, Jones, Joseph & Lang, Portland.

*Raymond Conboy,* Portland, argued the cause for respondent. With him on the brief were Donald R. Wilson, and Pozzi, Wilson & Atchison, Portland.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

HOLMAN, J.

Plaintiff brought an action upon a contract to insure a crane against damage or loss. The action had two counts: the first on an oral binder to insure the crane, and the second on a written policy of insurance. The case was tried by the court without a jury, and judgment was entered for plaintiff. Defendant appealed.

As is proper after a verdict for plaintiff, the facts will be stated in the most favorable manner to plaintiff which the evidence will justify. Plaintiff purchased a crane which was situated in mountainous terrain. He intended to bring it to Portland for repair

and desired to insure it against loss or damage by accident while in transit. He called Kent, a representative of a general agent for defendant who had authority to orally bind defendant, and explained to him his need. Kent subsequently called plaintiff back and told him defendant did not want to cover the crane until it was moved to Portland. Plaintiff told the representative that he needed no coverage after the crane was in Portland, that he had to bring the crane out of the mountains under its own power because a truck could not get to it, and that he wanted coverage because he was worried about it tipping over as it came out of the mountains. Kent said he would see what he could do and would call plaintiff again. When he did call back, he told plaintiff that the crane was covered and for plaintiff to go ahead, and he read him the insuring language which would be included in the policy.

Prior to moving the crane, plaintiff received the written policy from defendant and read the insuring provisions. Despite momentary familiarity with the policy language, he did not grasp its significance and thought he was covered while removing the crane from the mountains because Kent had indicated to him he was covered and "to go ahead" after plaintiff had explained his need. The insuring language of the policy was as follows:

"2. THIS POLICY INSURES against direct loss or damage (except as hereinafter excluded) to the above described property caused by:
"* * * * *

"(d) Collapse of bridges, culverts, docks, loading platforms;

"(e) Collision, derailment, or overturning of con-

veyances *while the insured property is being transported thereon."* (Emphasis ours.)

Thereafter plaintiff attempted to move the crane out of the mountains under its own power to a place where he could meet a truck. While he was so doing, a narrow mountain road gave way and the crane slipped into a canyon and was a total loss. Defendant, of course, contends there is no coverage because there was no loss while the property was being transported on another conveyance. The court made the following conclusions of law:

"1. The policy of insurance issued to plaintiff is ambiguous and is to be construed against the defendant UNITED PACIFIC INSURANCE COMPANY.

"2. The defendant, acting by and through the representations, acts, omissions and conduct of David Kent, has interpreted the policy so as to include coverage of the loss of plaintiff's crane."

The court also made a finding of fact that defendant's representative orally bound defendant for coverage of the loss. Defendant's basic contention is that the facts do not justify a recovery for plaintiff.

The first question is whether plaintiff is entitled to recovery on the oral binder for coverage. If he is, the necessity of dealing with all the problems surrounding a recovery on the policy does not exist. The trial court held, and the evidence is sufficient to justify a finding, that the agent orally bound his company to insure plaintiff's crane against the risk which demolished it. However, the policy had been issued and received by plaintiff, and its insuring provisions had been read prior to plaintiff's attempting the movement of the crane which resulted in its loss. The usual rule

in such situations is stated in 1 Couch on Insurance 2d, 572-73, § 14:4 (1959), as follows:

> "Where an oral contract is to be in effect until a policy is issued, a policy so issued, delivered, and retained is presumed to contain the entire contract, since the oral contract is merged in the written one, and, in the absence of grounds for reformation, only such loss is covered as falls within the written contract * * *." (Footnote omitted.)

This general rule was upheld by this court in the case of *Greenberg v. German Ins. Co.,* 83 Or 662, 670, 160 P 536, 163 P 820 (1917), in which the following language was quoted with approval:

> "One who accepts a policy of insurance issued to him upon his written application cannot ignore the writings, and sue upon a preliminary parol agreement to issue a policy of different form; his remedy, in case of fraud or mistake, being the reformation of the contract in equity."

■ Plaintiff urges that we adopt an exception to the general rule as set forth in 1 Couch on Insurance 2d 573, § 14:4 (1959), which is as follows:

> "There is no merger of the preliminary oral contract and the written contract if there is a material variance between the terms of the two contracts of which the insured has not been advised * * *." (Footnote omitted.)

He also cites *Preferred Risk Fire Ins. Co. v. Neet,* 262 Ky 257, 90 SW2d 39 (1936); *Baker v. St. Paul Fire & Marine Insurance Company,* 427 SW2d 281 (Mo App 1968); and *American Surety Company of New York v. Williford,* 243 F2d 494 (8th Cir 1957), for the same proposition. In *Baker* and *American Surety* the policy was not issued until after the loss, so the prior oral contract would have to apply; therefore, these two cases do not stand for the proposition for which they

were cited. In some jurisdictions, however, there is such a recognized exception to the general rule, but we believe we are foreclosed from adopting such exception, assuming we were so disposed, by the enactment of ORS 743.075 (2),[1] which provides:

"(2) No binder shall be valid beyond the issuance of the policy with respect to which it was given, or beyond 90 days from its effective date, whichever period is the shorter."

Plaintiff puts emphasis on the words "with respect to which it was given." He argues that the coverage of the policy was so foreign to that of the oral binder that it was not issued "with respect" to the binder. He also argues that *Greenberg* should be limited to cases "where the written policy provides substantially the coverage which was contemplated by the insured." This raises the intent with which ORS 743.-075 (2) was enacted by the legislature. A search of the archives for legislative history has been fruitless, and we are left to our own devices to determine the meaning of the statute. It occurs to us that if the oral binder and the issued policy are substantially the same, there is no problem. It is only in circumstances where they are not the same that there would be any necessity for such a statute. We therefore conclude that it was enacted to take care of those situations like the present one, where there is a claim that the coverage of the oral binder is greater than the written policy. As a result, it is our conclusion that plaintiff is limited to a recovery on the policy, if that is possible.

■ Plaintiff contends, and the trial court held, that the policy is ambiguous, and, being ambiguous, it should be construed against the insurer. Defendant,

---

[1] Oregon Laws 1967, ch 359, § 358.

on the other hand, contends, and we hold, that the policy language as it relates to the occurrence in question, is not legally ambiguous. Provision 2 (e), which is the provision of the policy in question, is not capable of being construed to cover the loss. It is not legally ambiguous. It is not open to construction.

The language has been the subject of interpretation by courts, and no cases have been called to our attention which go as far as plaintiff would have this court go in this case. There are cases cited by plaintiff which have construed the language to cover a situation in which the insured cargo was being transported on a truck, and the cargo (not the truck) collided with another object (like an overpass).[®] The basis of the holdings is that to construe the word "collision" to apply solely to the truck as differentiated from its load would be absurd. In our opinion these cases are not controlling here. The crane in question was not being transported on another vehicle, which circumstance is required before there is coverage.

■ Plaintiff also contends that defendant cannot assert the literal meaning of provision 2 (e) of the insuring language since Kent interpreted the language to include coverage of the loss. Plaintiff relies upon the rule stated in 4 Couch on Insurance 2d 71-72, § 26:214 (1960), which is as follows:

> "An insurance company is bound by the construction placed upon a provision of the policy by its agent provided the agent is acting within the scope of his actual or apparent authority; although

---

[®] Jorgenson v. Girard Fire and Marine Ins. Co., 229 Minn 48, 38 NW2d 209 (1949); Gould Morris Electric Co. v. Atlantic Fire Ins. Co., 229 NC 518, 50 SE2d 295 (1948); Bucks County Const. Co. v. Alliance Ins. Co., 162 Pa Super 153, 56 A2d 338 (1948). *But see* Hamilton Trucking Service v. Automobile Ins. Co., 39 Wash 2d 688, 237 P2d 781 (1951), for a stinging criticism.

a provision that no agent can change any of the terms of the policy by parol does not affect his power to bind the insurer by construction of doubtful language therein * * *." (Footnote omitted.)

Plaintiff also cites *Mutual Benefit Life Ins. Co. of Newark, N. J. v. Bailey,* 55 Del 215, 190 A2d 757 (1963); *Bayer v. Lutheran Mutual Life Insurance Company,* 184 Neb 826, 172 NW2d 400 (1969); and *Stivers v. National American Insurance Company,* 247 F2d 921 (9th Cir 1957), as authority for his position, and these cases do support the rule. It should also be noted that the rule as stated above is applicable by its terms even in those situations in which, as here, the policy has a provision that the company may not be estopped by the knowledge of an agent from asserting the provisions of the policy.

■ It is our opinion that Kent, as a representative of a general agent of the defendant, had the ostensible authority to interpret the contract. Purchasers of insurance are continually presenting their coverage needs to general agents for the insurers, and the agents, on behalf of their company, are shaping the policy to meet the needs of the customers and are thus construing coverage for the insurer. This is what happened here.

■ Defendant contends that the rule as stated permits interpretation only of "doubtful language" and that the language here is not doubtful but plain and concise. The rule asserted in most cases binds the company unless the interpretation of the agent is "patently absurd." The language does not have to be ambiguous as a legal matter in order to bind the insurer to the agent's interpretation because, if an ambiguous provision were required, the ambiguous lan-

guage would be construed against the insurer in any event, and there would be no need for the stated rule. Also, in determining whether the agent's interpretation is "patently absurd" when compared with the policy language, it should be remembered that we are talking about the appearance of the interpretation to the customer. The average customer is neither an insurance man nor a lawyer, but is more likely to be a heavy equipment mechanic, as was plaintiff. What might appear to be a grossly unreasonable interpretation to a person of specialized learning would not appear to be so to an individual like plaintiff or to the average customer.

■ It seems entirely reasonable to us that plaintiff should not appreciate the fact that the language of the policy would not cover him when considered in the face of the agent's assurance that he was covered. After all, plaintiff considered Kent a specialist in fitting policy coverages to people's needs and he relied on Kent's specialized knowledge as a representative of the insurer concerning the policy coverage. The language of *Mutual Benefit Life Ins. Co. of Newark, N. J., supra,* is appropriate:

> "Defendant then argues that the finding of the trial court was insufficient to justify the invocation of an estoppel. In the first place, defendant argues that since plaintiff, a college-educated professional man, read the policy, he must be bound by its terms. Plaintiff, however, certainly was entitled to rely upon the advice of defendant's agent, who has been active in the field of insurance since 1938 * * *.

> "Thirdly, defendant argues that since the court has found the policy to be unambiguous, the interpretations placed upon the policy by an agent will not bind the company, citing E. J. Evans Co. v.

Ohio State Life Insurance Company, 144 So2d 833 (Florida District Court of Appeal, 1962). While it is no doubt true that an insured may not rely upon an interpretation placed upon a policy by an agent which is patently absurd, an insured may rely upon an interpretation which is plausible, although legally untenable, provided that the interpretation be not 'in patent conflict' with the terms of the policy. See Stivers v. National American Insurance Company, 247 F2d 921 (9th Cir 1957). If this were not true, the rule of estoppel would be meaningless because the quantum of ambiguity which defendant suggests is necessary to invoke an estoppel would also be sufficient to invoke the rule of liberal construction in favor of the insured.

"The only question here is whether the agent's interpretation is so plainly in conflict with the forfeiture provision of the rider that plaintiff cannot be heard to say that he relied upon it * * *." 190 A2d at 760.

■ Defendant contends, however, that even if all the foregoing is true, the basis for the application of the rule is estoppel, and the facts which justify an estoppel have not been pleaded and plaintiff may not avail himself of them. There is no doubt that the doctrinal basis for the application of the rule in question, and heretofore quoted from Couch, is that the insurance company is estopped to assert the actual meaning of the provisions of its policy because the insured is entitled to rely upon a contrary interpretation of those provisions by the company's general agent. This court has ruled many times that an estoppel must be pleaded. *Cody v. Ins. Co. of Oregon,* 253 Or 587, 592, 454 P2d 859 (1969); *Reed v. Commercial Ins. Co.,* 248 Or 152, 154, 432 P2d 691 (1967).

■ However, this court has also recognized an exception to the rule that the facts out of which an

estoppel arises must be pleaded and that exception arises when the facts which justify the estoppel have been admitted in evidence without objection. The exception was applied in *Stinemeyer v. Wesco Farms, Inc.,* 260 Or 109, 116-17, 487 P2d 65 (1971). Plaintiff in that case was seeking an equitable foreclosure of a conditional sales contract of real property and defendant, without pleading estoppel, introduced without objection evidence of late payments which had been accepted by the seller. We affirmed the trial court's dismissal of the case upon the basis of estoppel because the seller had lulled the purchaser into a false sense of security by accepting late payments and had not given the purchaser an opportunity to make them up before commencing foreclosure. We there said:

"* * * We think, however, that plaintiff is in no position to insist on that rule [estoppel must be pleaded] in this case.

"The issue was raised at trial, without objection, when plaintiff was questioned about his acceptance of late payments, and was argued in the trial court by defendants' counsel. Plaintiff did not object that this issue was outside the scope of the pleadings. It appears that plaintiff was not prejudiced by the introduction of this issue into the case, since he has apparently produced all of his communications with Wesco which are in the nature of notices and demands. Under these circumstances, plaintiff may not for the first time on appeal claim that the issue was not properly raised by the pleadings * * *." 260 Or at 116-17.

The matter is also the subject of Annotation, 120 ALR 8, 87-88 (1939), where the exception is stated as follows:

"Although, as heretofore seen, a great majority of the cases lay down the rule that unless an estoppel or waiver is pleaded it is inadmissible in

evidence, and in evidence is unavailable, a number of cases make still another exception to the general rule and hold that if the estoppel or waiver is admitted in evidence or becomes an issue without objection at the time that it was not pleaded, this objection is waived, and the estoppel or waiver is as conclusive as if pleaded specially, whether it be an estoppel in pais, a waiver, estoppel by deed, or the estoppel raised by a prior adjudication." (Footnotes omitted.)

The only objection that was made to the introduction of the evidence concerning Kent's construction of the policy terms had nothing to do with an unpleaded estoppel. In addition, it is apparent that defendant introduced all of its evidence refuting plaintiff's claim about what Kent told plaintiff concerning coverage. Where we can be certain that all of the evidence is in from both sides concerning whether an estoppel would be applicable, it would be honoring form over substance not to treat the issue as if it had been pleaded. It may be that the parties were not even thinking in terms of estoppel until after briefing the matter on appeal, but, if it is apparent that all the evidence which bears upon the question has been introduced and the opponent of the party not pleading the estoppel has not been prejudiced, there appears to be no logical reason for not considering the issue if a rational and just determination of the case so requires.

■ Without citation of authority, defendant asserts that the parol evidence rule, ORS 41.740, prevents the court from considering the parol evidence of its agent's construction of its policy language. The parol evidence rule is one of substantive law, rather than one of evidence, and we know of no authority which holds that facts which can be the basis for an estoppel

may not be received in evidence because of the provisions of the rule.

■ It is our conclusion that there was sufficient evidence from which the trial court could find that plaintiff was entitled to recover under defendant's policy for the reason defendant is estopped from asserting that plaintiff's loss was not covered by the terms of the policy because of the construction placed upon them by defendant's general agent.

■ The trial court awarded plaintiff $2,750 attorney fees pursuant to ORS 743.114, which is as follows:

> "If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

Defendant contends that plaintiff is not entitled to attorney fees because 1) he alleged none of the prerequisites to recovery of attorney fees in either his complaint or cost bill; 2) there was no proof that settlement was not made within six months of the presentation of a proof of loss as required by the statute; and 3) if estoppel is the basis for the recovery, it is not an action on the policy within the meaning of ORS 743.114.

Many of the questions raised here are answered in the opinion of *Tiano v. Elsensohn,* 268 Or 166, 520 P2d 358 (1974), which was decided after this matter was heard in the trial court. That opinion held that when attorney fees are provided by statute

as a part of costs, it is unnecessary to plead or prove them during trial. All that is necessary is a specific amount in the cost bill and an objection by defendant if he believes the amount to be improper or not allowable in any respect. If an objection is filed, the prevailing party is then put on proof to overcome the objection. The procedure in the instant case followed that which was often used prior to the time of the above-mentioned opinion, i.e., the request for attorney fees was made in the prayer, and a hearing was held subsequent to trial before the court upon the allowance of fees. Therefore, we will not fault the procedure in this case on a pleading or procedural basis, as no prejudice resulted therefrom to the defendant.

Defendant's contention that attorney fees should not be allowed if an estoppel is the basis for plaintiff's recovery is not well taken. Because defendant is estopped to assert that the provisions of the policy differ from its agent's interpretation of those terms, makes the recovery no less a recovery on an agreement to insure. Defendant cites *Colorado Life Co. v. Teague,* 117 SW2d 849, 856-57 (Tex Civ App 1938), which holds that an agreement for temporary insurance prior to issuance of the policy is not a "policy" of insurance within the meaning of the Texas statute and no attorney fees can be allowed. If the factual situation and the statute were the same as the ones here, which they are not, we would still disagree with that case.

There was no necessity for plaintiff to file a proof of loss because, prior to the expiration of six months from the loss, defendant gave plaintiff notice that it was rejecting the claim. There was no need for plaintiff to do a useless act by thereafter filing a proof of loss. *Grau v. Northwestern Mut. Ins. Co.,* 221 Or 240, 245, 350 P2d 1082 (1960).

Defendant also claims that the amount of the attorney fees is unreasonable. The fees allowed were within the proof, and there is therefore no basis for a reversal.

The judgment of the trial court is affirmed.