# LUNDQUIST,
*Appellant,*

*v.*

# FOX et al,
*Respondents.*

## (No. 78-10-133, CA 16931)

624 P2d 667

Sid Brockley, Oregon City, argued the cause for appellant. With him on the briefs was Steven L. Price, Certified Law Student, Oregon City.

Douglas D. Hagen, Portland, waived appearance for respondent Robert B. Fox.

Frank M. Parisi, Portland, argued the cause for respondent New England Mutual Life Insurance Company. With him on the brief were David B. Markowitz, Portland, and Spears, Lubersky, Campbell & Bledsoe, Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff appeals the trial court's denial of his claim against defendant New England Mutual Life Insurance Company (hereinafter "New England Life") by which plaintiff attempted to recover medical and life insurance benefits for his wife's injury and subsequent death.

Plaintiff and his wife signed applications on June 14, 1978, for group life, accidental death and major medical expense insurance coverage to be provided by New England Life and tendered to New England Life's agent, defendant Fox, the first month's premium for the insurance coverage. The parties stipulated as follows:

" * * * Robert Fox advised plaintiff that his coverage was in effect as of the time of the application, so long as the application satisfied New England Life's normal underwriting standards. Robert Fox advised plaintiff that his check for the first month's premium would be a binder during the underwriting process. Plaintiff was told that the group insurance would be effective immediately, and that he and his wife would have insurance during the underwriting process."

On June 19, 1978, plaintiff told Fox to cancel the group insurance application because plaintiff desired to "shop around" for a lower-priced insurance plan. On June 29, 1978, Fox was advised by New England Life that additional information would be required prior to its approval for coverage. It was not until July 5, 1978, that Fox advised New England Life to close the file as plaintiff was seeking a cheaper plan elsewhere. Fox never informed plaintiff that New England Life desired further information from plaintiff. New England Life returned plaintiff's check to Fox, but Fox did not return it to plaintiff.

On July 24, 1978, Fox called plaintiff to inquire if plaintiff had found cheaper coverage and, upon learning that plaintiff and his wife were about to leave on a long trip, suggested that they should resubmit the original applications with the original premium check. This plan met plaintiff's approval. Again, Fox advised plaintiff that " * * * the insurance coverage would be in force immediately, so long as the application ultimately complied with the company's normal underwriting requirements." More specifically, Fox advised plaintiff that he and his wife would have

coverage while they were on their trip, pursuant to the original applications. Fox later remembered that further information was required by New England Life. By then, however, plaintiffs had already departed and Fox, therefore, failed to resubmit the applications.

On August 8, 1978, plaintiff's wife died from injuries sustained in a motorcycle accident. New England Life denied there was medical or life insurance coverage.

Of the documents involved in plaintiff's application for coverage, four provided that insurance coverage would not be effective until approved by the home office. Three of these forms were signed by the plaintiff. One of the forms he signed, the application for group insurance, also provided that no agent or sales representative was authorized to make any contracts for New England Life, to determine insurability, or to waive or alter any of the conditions of the application.[1] The parties stipulated that plaintiff did not recall reading any of this language. There was no evidence adduced at trial that plaintiff or his wife ever read any of the limiting language. It was also stipulated at trial that plaintiff and his wife were insurable under New England Life's normal underwriting procedures.

---

[1] The group insurance proposal provided:

"The above premiums assume an effective date of 7-1-78. The actual effective date shall be the date determined by the Insurance Company upon the acceptance of the application by the New England Mutual Life Insurance Company at its home office. * * * "

The application for group insurance provided:

"EFFECTIVE DATE. The effective date of the insurance shall be the first day of the month co-incident with or next following the date of acceptance of the application by the New England Mutual Life Insurance Company at its Home Office except that insurance for any employee or dependent on whom evidence of insurability is not approved on or prior to such date will not become effective until the first day of the month following the month in which such evidence of insurability is approved.

"* * * * *

"IT IS AGREED THAT NO AGENT OR OTHER SALES REPRESENTATIVE IS AUTHORIZED TO MAKE ANY CONTRACT FOR NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY OR TO DETERMINE INSURABILITY OR TO WAIVE OR ALTER ANY CONDITIONS OF THE APPLICATION, THE GROUP INSURANCE POLICY OR POLICIES OR

The parties also stipulated that Fox was only a soliciting agent for New England Life pursuant to a "career contract," which provided that Fox's actual authority was to "solicit and procure applications for policies * * * " and " * * * to deliver policies only upon the payment to him of the premiums due thereon * * * ." The agreement stated "The Agent shall not make, alter or discharge any contracts or agreements, waive forfeitures, or incur any obligation or liability for which the General Agent or the Company shall be responsible."

Plaintiff argues that New England Life should be estopped from denying coverage, that it should be bound by the "actual or apparent authority" of its agent, Fox, who represented to plaintiffs that they were covered during the application process. New England Life counters that, regardless of its agent's verbal representations, plaintiff and his wife had written notice that the agent lacked authority to change the terms of the agreement and that the insurance would take effect only upon approval at its home office. Therefore, it argues that it should not be bound by Fox's representations.

We are unable to find a recent Oregon case that deals with an application that not only contains a provision which conflicts with an insurance agent's verbal representation, but also contains language that would alert the intended reader to the agent's limited authority to change

---

THE RECEIPT, AND THAT NOTICE TO OR KNOWLEDGE OF ANY SUCH INDIVIDUAL AS TO ANY FACTS, WHENEVER GIVEN, SHALL NOT BE DEEMED NOTICE TO THE COMPANY UNLESS RECORDED IN THIS APPLICATION."

The application for employee insurance provided:

"NOTE: INSURANCE WILL TAKE EFFECT ONLY UPON APPROVAL BY THE INSURANCE COMPANY AT ITS HOME OFFICE."

The agent's report provided:

"NOTE: NO COVERAGE IS IN FORCE UNTIL APPROVED BY HOME OFFICE.

"* * * * *

"20. I UNDERSTAND THAT:

"(A). THE INSURANCE APPLIED FOR IN THIS APPLICATION WILL NOT BE EFFECTIVE UNTIL APPROVED BY THE HOME OFFICE. * * * "

the written provisions.[2] Plaintiff cites *Farley v. United Pacific Ins. Co.,* 269 Or 549, 525 P2d 1003 (1974). In *Farley,* the agent indicated that an insurance policy would provide specific coverage, although the policy itself did not provide the desired coverage. The court concluded that "* * * a general agent of the defendant had the ostensible authority to interpret the contract * * * ." The defendant was, therefore, estopped from asserting the actual meaning of the provision in its policy, " * * * because the insured is entitled to rely upon a contrary interpretation of these provisions by the company's general agent." *Farley v. United Pacific Ins. Co., supra,* 269 Or at 559.

Unlike the case at hand, the agent in *Farley* was a general agent, and the insurer did not express any limitation on its agent's authority. Therefore, notice of such limitation was not an issue. Another case upon which plaintiff relies, *Knappenberger v. Cascade Ins. Co.,* 259 Or 392, 487 P2d 80 (1971), also is not helpful on the issue of notice. *Knappenberger* involved an endorsement limiting coverage. The agent made no representation conflicting with the written endorsement.[3]

According to 16 J. A. Appleman & J. Appleman, Insurance Law and Practice 144, § 8673 (Revised 1968):

> "Where limitations upon an agent's powers are plainly and unambiguously set forth in the application taken from the applicant, the usual rule is that such person is bound thereby, as such limitations are valid and enforceable as to both parties to the contract."

---

[2] In an 1895 case, *Egan v. Insurance Co.,* 28 Or 289, 42 P 611 (1895), the Supreme Court held that where a policy was issued that contained notice of an agent's limited power, the insured was presumed to have known the authority of the agent. In an earlier case, *Weidert v. State Ins. Co.,* 19 Or 261, 24 P 242 (1890), the Supreme Court rejected the insured's claim that the agent's assertions which were contrary to the terms of the policy were binding on the insurer. The Court held that the insured was bound by the terms of the agreement since the insured knew of the agent's limited authority because it was plainly printed in the application. Although the insured did not understand English well, he did not claim he did not understand the application.

[3] The plaintiff also relies on *Bunn v. Monarch Life Insurance,* 257 Or 409, 478 P2d 363 (1971), in which the Supreme Court held that where an agent gave a false answer in an application, although he was provided with a correct answer by the insured, the insurance company was estopped to deny coverage of a policy which had already issued. The case dealt with the applicant's duty to read the application and notify the insured of any misrepresentations. That is not the issue in the case at hand.

This is reiterated in 3 G. Couch, Couch on Insurance 2d, 558-559, § 26:79 (2d ed 1960), which states:

> " * * * when the application gives notice of the agent's limited authority to waive conditions, the insured is bound thereby, as when it provides that the insurer shall not be bound by any act or statement of its agent not contained in the application. [footnote deleted] There is authority that an insured is presumed to know the limitations upon the power of an insurer's agent expressed in the application, [footnote deleted] and that such restrictions are binding upon the applicant unless violative of some statutory provision. [footnote deleted] * * * The failure of the applicant to read the application is ordinarily of itself inexcusable negligence, [footnote deleted] and a person signing an application in blank is chargeable with limitations on the agent's authority to make binding parol contracts whether the application was read or not. [footnote deleted] * * * Material provisions and conditions of the policy cannot be waived by the agent, when the limitations on the agent's authority are set forth in the application and in the policy. [footnote deleted]"[4]

We see no reason to diverge in this case from the general rules of both agency law and insurance law. New England Life attempted to give repeated notice, in the documents required to be executed by applicants for issuance of the policy, of the effective date of the coverage and of the limitations on its agent's authority. We conclude, therefore, that plaintiff and his wife were chargeable with notice of agent Fox's actual authority. New England Life is not bound by Fox's representations as to the effective date of the insurance coverage.

Affirmed.

---

[4] *See Gregg v. John Hancock Mutual Life Insurance Co.,* 43 Ohio St 2d 119, 330 NE2d 913, 917 (1975); *Elliott v. Interstate Life and Accident Insurance Company,* 211 Va 240, 176 SE2d 314 (1970); *Anderson Feed and Produce Company v. Moore,* 66 Wash 2d 237, 401 P2d 964 (1965); and *Shipley v. Ohio National Life Insurance Co.,* 296 F2d 728, (3rd Cir 1961).

*But see Vernon Fire and Casualty Insurance Co. v. Thatcher,* 152 Ind App 692, 285 NE2d 660 (1972) and *Harr v. Allstate Insurance Company,* 54 NJ 287, 255 A2d 208 (1969).