Argued and submitted July 9, 2014, reversed and remanded Feruary 4, 2015

Donald DEARDORFF,
an individual;
C. Brooke Deardorff, an individual;
Allison Deardorff, an individual;
and Deardorff Stable, LLC,
an Oregon limited liability company
*Plaintiffs,*

*v.*

Robert FARNSWORTH,
an individual;
The Summit Group of Oregon, LLC,
an Oregon limited liability company;
and Mission Insurance Services, Inc.,
an Oregon corporation,
*Defendants-Respondents.*

*and*

OREGON MUTUAL INSURANCE COMPANY,
a California corporation,
*Defendant-Appellant,*

*and*

DOES 1-2,
*Defendants.*

Clackamas County Circuit Court
CV10040782; A152357

343 P3d 687

Robert S. May argued the cause for appellant. With him on the briefs was Smith Freed & Eberhard, P.C.

James M. Callahan argued the cause for respondents. With him on the brief was Callahan & Shears, P.C.

Before Armstrong, Presiding Judge, and Egan, Judge, and De Muniz, Senior Judge.

DE MUNIZ, S. J.

## DE MUNIZ, S. J.

The issue in this case is whether the trial court correctly held that defendant Oregon Mutual Insurance Company (OMI) was estopped from relying on an exclusion in an insurance policy. Plaintiffs were transporting horses in California that were owned by others when the trailer carrying the horses caught on fire, killing the horses. The insurers for the horse owners compensated the horse owners for their losses and then filed an action against plaintiffs in California, alleging that plaintiffs had negligently caused the death of the horses. Plaintiffs tendered the defense of the California action to their insurer, OMI. OMI refused to provide a defense for plaintiffs, contending that plaintiffs' insurance policy with OMI did not cover the cost of defending plaintiffs in the action. Plaintiffs also tendered the defense to insurance agent Robert Farnsworth, The Summit Group of Oregon, LLC, and Mission Insurance Services, Inc. (the agency defendants), who, like OMI, refused to provide a defense to plaintiffs. Plaintiffs successfully defended the California action, incurring costs in doing so.

Plaintiffs filed an action in Oregon against OMI and the agency defendants to recover their defense costs.[1] The trial court granted summary judgment for plaintiffs against OMI, concluding that OMI was estopped from denying liability coverage for the loss of the horses and that OMI had breached its written contract when it denied property coverage based on the policy's "other insurance" clause. The trial court also entered summary judgment for the agency defendants, concluding that they were not liable for the defense costs because OMI was estopped from denying liability coverage and was required to pay plaintiffs' defense costs.

Following the trial court's summary judgment rulings, plaintiffs and OMI reached a settlement agreement, leaving OMI and the agency defendants as the remaining parties to the action. As part of the settlement, plaintiffs

---

[1] Although plaintiffs' complaint is not in the appellate record, we surmise from the parties' briefs that plaintiffs alleged claims for breach of a written contract, breach of an oral contract, breach of a reformed contract, and breach of the covenant of good faith and fair dealing.

assigned their claims against the agency defendants to OMI. OMI, seeking to recover the amount that it had paid to plaintiffs in the settlement,[2] then filed a cross-claim against the agency defendants for indemnity and filed a motion for reconsideration of the trial court's previous rulings. The trial court denied OMI's motion for reconsideration regarding estoppel and granted the agency defendants' motion for summary judgment on OMI's cross-claim. OMI appeals the judgment entered on the summary judgment rulings.

On appeal, OMI raises multiple assignments of error. First, it challenges the trial court's grant of summary judgment to plaintiffs on the ground that OMI was estopped from relying on provisions of its policy to deny liability coverage for the loss of the horses. Second, OMI argues that the trial court erred in granting the agency defendants' summary judgment motion based on the trial court's ruling that OMI was estopped from denying care, custody or control (CCC) liability coverage to plaintiffs. Within the second assignment of error, OMI challenges the trial court's grant of summary judgment for agency defendants on OMI's cross-claim for indemnity.

Because the trial court granted summary judgment to the agency defendants, we must decide whether there are any genuine issues of material fact and whether the agency defendants are entitled to judgment as a matter of law.[3] *See Double Eagle Golf, Inc. v. City of Portland,* 322 Or 604, 606, 910 P2d 1104 (1996) (the court must determine whether the party that moved for summary judgment is entitled to judgment as a matter of law). When reviewing a trial court's grant of summary judgment, we view the evidence and all reasonable inferences to be drawn from it in the light most favorable to the nonmoving party, in this case OMI.

---

[2] Counsel for OMI discussed the effects of the settlement at a subsequent hearing:

"[OMI] is taking care [of] plaintiffs' claims. Plaintiffs have been taken care of. Now, the only dispute that remains is between [OMI] and the agents as to whether or not the agents are responsible to [OMI] for the payment [OMI] had to make to the plaintiffs."

[3] At the summary judgment hearing, counsel for the agency defendants indicated that the agency defendants joined plaintiffs on their motion for summary judgment on the estoppel issue.

*Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 613, 892 P2d 683 (1995).

The following facts are not in dispute. In March 2008, plaintiffs directed their insurance agent, Farnsworth, to obtain insurance for their equine stables, as plaintiffs' existing insurance policy was about to expire. Plaintiffs submitted an application, and, on April 14, 2008, OMI provided the agency defendants with a quote for "Business and Commercial Farm" insurance. The quote did not include property or liability (CCC) insurance. In the past, plaintiffs' "Business and Commercial Farm" insurance policies had excluded CCC liability coverage, requiring plaintiffs to purchase stand-alone CCC liability coverage from other insurers. On April 18, 2008, Samantha Wallace, an agency defendant representative, sent an email to Craig Smith, an underwriter at OMI, inquiring whether OMI offered CCC insurance. Smith responded, "[l]iability exposure for property of others in the insured's CCC, that is covered in liab form." Wallace and Smith then communicated about CCC property coverage, which ultimately led OMI to provide a revised quote including CCC property insurance.[4]

On April 25, 2008, Wallace emailed Smith to bind coverage effective immediately and, on the same day, OMI issued the policy. In turn, Farnsworth told plaintiffs that they had CCC liability coverage with OMI. However, the policy did not include CCC *liability* insurance; specifically, the policy excluded "'Property damage' to * * * [p]ersonal property in the care, custody or control of the 'insured.'" The policy did include CCC *property* insurance, but it contained an "other insurance" provision, also known as excess coverage, which conditioned OMI's coverage obligations on whether there were additional insurance policies covering the same loss. OMI never said that the CCC property coverage was excess coverage only. As noted, on July 6, 2008, plaintiffs were transporting horses in California that were owned by others when the trailer transporting the horses caught fire, killing the horses. At some point between the issuance

---

[4] At the January 26, 2012, summary judgment hearing, counsel for OMI described CCC insurance: "Essentially, somebody else gives you your—gives you their property that you're supposed to take care of. If anything happens to it you can have property insurance for it or you can have liability insurance for it."

of the OMI policy and the date of the loss, OMI sent the policy to the agency defendants to review it with plaintiffs. Plaintiffs did not receive the written policy until after the July 6 loss. The horse owners' insurers paid the horse owners for their losses after agreeing with OMI that their policies were primary and OMI's was excess. The horse owners' insurers sued plaintiffs to recover their losses. OMI refused to defend plaintiffs based on the policy's CCC liability-insurance exclusion.

In its first assignment of error, OMI asserts that the trial court erred when it held that OMI was estopped from relying on provisions in its policy to deny liability coverage for the loss of the horses. The trial court's application of estoppel was based on OMI's communication to the agency defendants—specifically, Smith telling Wallace that CCC liability was "covered" under the liability form—and that this communication led the agency defendants to tell plaintiffs that they had CCC liability insurance.

Estoppel precludes a person, based on the person's acts, conduct, or silence where there was a duty to speak, from asserting a right that otherwise would have been available. *Marshall v. Wilson*, 175 Or 506, 518, 154 P2d 547 (1944). To establish estoppel,

"(1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it."

*Bennett v. City of Salem et al.*, 192 Or 531, 541, 235 P2d 772 (1951). However, there are limitations to the application of estoppel in the insurance context. OMI argues that estoppel cannot create coverage or negate an express exclusion in an insurance policy. To support its position, OMI relies on *ABCD...Vision v. Fireman's Fund Ins. Companies*, 304 Or 301, 744 P2d 998 (1987) (hereinafter *"ABCD Vision"*), and *DeJonge v. Mutual of Enumclaw*, 315 Or 237, 843 P2d 914 (1992). In *ABCD Vision*, the Supreme Court held that "[e]stoppel cannot be invoked to expand insurance coverage or the scope of an insurance contract." 304 Or at 307.

In evaluating whether estoppel may apply to an insurer's assertion of policy defenses, we begin by determining "whether the provisions [on] which the insurer relies are conditions of forfeiture * * * or, instead, are matters relating to the scope of coverage." *Id.* Typically, estoppel is available to avoid a condition of forfeiture, but it is not available to avoid an express exclusion; that is, it cannot expand the scope of an insurance contract. *Id.*; *see DeJonge*, 315 Or at 241 (stating general rule); *Richardson v. Guardian Life Ins. Co.*, 161 Or App 615, 625-26, 984 P2d 917, *rev den*, 329 Or 553 (1999) (insurance policy never provided certain coverage; therefore, estoppel was unavailable to defeat the policy provision under the condition-of-forfeiture doctrine).

OMI asserts that the provision at issue is an express exclusion, and the agency defendants do not refute that contention. An express exclusion operates to remove certain circumstances from coverage that would be covered but for the exclusion. *ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 222 Or App 453, 472, 194 P3d 167 (2008), *modified on recons*, 225 Or App 257, 201 P3d 912 (2009); *see Cimarron Ins. Co. v. Travelers Ins. Co.*, 224 Or 57, 61, 355 P2d 742 (1960) ("The purpose of an exclusion clause is the opposite of that of a coverage clause. * * * [T]he effect of an exclusion clause is to deny the protection of the policy to someone who, but for the denial, would be an insured."); *Webster's Third New Int'l Dictionary* 793 (unabridged ed 2002) (defining an "exclusion clause" as "a clause in an insurance policy barring certain losses or risks from coverage").

A condition of forfeiture exists where, initially, the policy provides coverage for the loss, but acts of the insured nullify the coverage. *Day-Towne v. Progressive Halcyon Ins. Co.*, 214 Or App 372, 381, 164 P3d 1205 (2007), *rev den*, 346 Or 65 (2009); *see, e.g., Kabban v. Mackin*, 104 Or App 422, 429, 801 P2d 883 (1990) (holding that the policy insured property, but failure to occupy premises negated coverage).

Here, for a condition of forfeiture to exist, OMI's policy would have to grant CCC liability insurance and condition its availability on subsequent acts of plaintiffs. That is not the case here, because the insurance policy never provided CCC liability coverage; rather, it expressly excludes CCC liability coverage.

Agency defendants argue that *Farley v. United Pacific Ins. Co.*, 269 Or 549, 525 P2d 1003 (1974), and *Allstate Ins. v. State Farm Ins.*, 67 Or App 623, 679 P2d 879 (1984), establish a rule different from the one set out in *DeJonge* and *ABCD Vision*. In *Farley*, the plaintiff sought to insure a crane against damage or loss while moving the crane under its own power. The plaintiff understood that the crane was covered while being moved under its own power based on a telephone conversation with an insurance agent in which the agent told the plaintiff that "the crane was covered and for plaintiff to go ahead," relying on wording in the policy that provided for "direct loss or damage (except as hereinafter excluded) to the above described property caused by: *** [c]ollision, derailment, or overturning of conveyances while the insured property is being transported thereon." *Farley*, 269 Or at 552-53 (emphasis omitted). The insurer denied coverage on the ground that the crane was not being transported on another conveyance, as the policy required; rather, it was damaged while moving under its own power. The court held that the defendant insurance company was "estopped from asserting that [the] plaintiff's loss was not covered by the terms of the policy because of the construction placed upon them by [their] general agent." *Id.* at 562.

At its core, the question for us is whether *ABCD Vision* and *DeJonge* or *Farley* and *Allstate* control in the present case. *DeJonge* highlights the applicability of *Farley*. In *DeJonge*, the plaintiffs met with an insurance agent to obtain insurance for their recently purchased grocery store. The plaintiffs told the agent that they wanted "full" or "complete" coverage, and, in response, the agent said that "he was there to serve [the plaintiffs'] purposes." 315 Or at 239. The agent knew the grocery store sold alcoholic beverages but did not discuss liquor liability coverage with the plaintiffs. The agent then obtained an insurance policy for the plaintiffs that expressly excluded liquor liability coverage. The plaintiffs sought to estop the insurer from relying on the exclusion. In holding that estoppel did not apply, the court distinguished the case from *Farley*. The court reasoned that *Farley's* holding estopping the insurance company from relying on the policy's exclusion was limited to situations in which an insured relied on an agent's interpretation of

an ambiguous provision. *Id.,* 315 Or at 245-46 n 6 ("The issue here is not interpretation of an ambiguous provision, but the validity of a clear provision."). In *Farley,* the court focused on the insurance agent's construction of the provision; the insurance company's general agent read the policy and interpreted it to include the plaintiffs' desired coverage. 269 Or at 559.

*Farley* involved an agent reading and interpreting a policy and *DeJonge* did not—that distinction is crucial. That is not the first time that we have highlighted that distinction. *See Patton v. Mutual of Enumclaw Ins. Co.,* 238 Or App 101, 119, 242 P3d 624 (2010), *rev den,* 349 Or 654 (2011) (comparing *Farley* and *DeJonge,* and noting that estoppel was available when an agent interpreted a policy's doubtful language, but unavailable when an agent represented that the policy would provide coverage in the face of an express exclusion). Here, no OMI representative or agent provided an interpretation of an ambiguous policy provision, as *DeJonge* indicates is required to apply estoppel to negate an express exclusion.

The other case on which agency defendants rely, *Allstate,* purports to apply the reasoning of *Farley.* In *Allstate,* an insurance agent represented to the son of the named insureds that the son's car was insured. However, the car was not covered under the terms of the policy. In concluding that the son was entitled to coverage under the policy, we held that "an insurer may be estopped from denying coverage when the party claiming coverage has acted in reasonable reliance on the agent's representation of coverage that is not patently absurd." 67 Or App at 628. In *Allstate,* there was no suggestion that the insurance agent was interpreting an ambiguous provision; to the contrary, we indicated that terms of the insurance policy were not ambiguous. *Id.* Subsequently, *DeJonge* highlighted the limitation of *Farley*'s application of estoppel to policy exclusions to situations where an insured relies on an agent's interpretation of an ambiguous provision. *DeJonge,* 315 Or at 245-46 n 6. In *Allstate,* the provisions at issue were not ambiguous. Thus, given the Supreme Court's decision in *DeJonge* our application of *Farley* in *Allstate* was misguided.

In summary, the pertinent case law establishes that—in the absence of an insurance agent's interpretation of an ambiguous policy provision—estoppel cannot be used to negate an express exclusion in an insurance policy. Here, the agency defendants seek to expand the scope of an unambiguous insurance policy through the doctrine of estoppel, which *DeJonge* and *ABCD Vision* prohibit. Accordingly, the trial court erred in granting plaintiffs' motion for summary judgment based on estoppel.

We turn to OMI's second assignment of error. The trial court's conclusion on summary judgment that the agency defendants were not liable for the defense costs from the California action was an outgrowth of its decision that OMI was estopped to deny coverage. Specifically, the order granting the agency defendants' motion for summary judgment stated:

> "*Because OMI is estopped from denying liability coverage* for the loss of the horses and must pay the defense costs incurred by Plaintiffs in defending the California Action the Agency Defendants are not liable for the defense costs incurred by Plaintiffs in the California Action."

(Emphasis added.)

After settling with plaintiffs, OMI filed a cross-claim for indemnity against the agency defendants. The agency defendants moved for summary judgment on the cross-claim, which the trial court granted. That decision was also premised on the court's conclusion that OMI was estopped from relying on the policy's CCC liability exclusion. Because we reverse the trial court's grant of summary judgment based on estoppel, it follows that the trial court's grant of summary judgment on the cross-claim must also be reversed.

Reversed and remanded.