Argued and submitted March 25, affirmed October 30, 1985

# AVEMCO INSURANCE COMPANY,
*Appellant,*

*v.*

## HILL et al,
*Respondents.*

(A8109-05615; CA A31602)

708 P2d 640

Jonathan M. Hoffman, Portland, argued the cause for appellant. With him on the briefs were Martin, Bischoff, Templeton, Biggs & Ericsson, Portland.

Charles J. Merten, Portland, argued the cause for respondent Skokan. With him on the brief were Richard S. Yugler and Merten & Fink, Portland.

Donald P. Richards of Burda & Richards, Wilsonville, waived appearance for respondent Hill.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Phelps was a renter pilot of an aircraft that crashed, killing him and his two passengers. Plaintiff, Avemco Insurance Company, brought this action against the personal representatives of the deceased's estate for a declaratory judgment to determine whether, under its policy issued to the aircraft's owners, it must defend against the passengers' wrongful death action against the pilot's estate.[1] Plaintiff appeals from a judgment declaring that Phelps was an insured under the policy.[2]

The aircraft crashed on February 24, 1980. Its owners had leased it to the Red Baron Flying Club, which in turn rented it to Phelps, a member of the club. The owners had purchased a "limited commercial" hull and liability policy from plaintiff. The handwritten application, dated February 1, 1980, specified a binder period of February 1 through February 10, 1980. On February 13, 1980, plaintiff received the premium for the policy together with a typed copy of the application. The typed application also specified a binder period of February 1 through February 10.[3] On March 13 plaintiff sent to the aircraft's owners a policy effective February 1, 1980, through February 1, 1981, except for the four days between February 10, 1980, and February 14, 1980, during which the payment premium was late.

Under plaintiff's basic "aircraft policy," any person using the aircraft with the owner's permission is an "insured." Phelps had permission of the owners to pilot the aircraft. The policy that plaintiff issued on March 13, 1980, however, included special endorsement AEE-52, which excludes a renter pilot as an "insured."[4] At trial plaintiff offered evidence

---

[1] Defendant Hill did not make an appearance. Accordingly, when we refer to defendant, we are referring to defendant Skokan.

[2] The judgment was entered on April 20, 1984. Defendant claims that the appeal is late, because a final judgment was previously entered on May 11, 1983. On December 6, 1983, we dismissed plaintiff's appeal of the May 11, 1983, "judgment," because it was not a final judgment. See ORCP 70A; ORCP 67B. The judgment of April 20, 1984, is a final judgment, and we have jurisdiction of this appeal.

[3] The parties do not dispute that both the handwritten application and the typed application were "binders" under ORS 743.075.

[4] With an exception not relevant here, the policy defined "insured" as follows:

"With respect to the insurance for coverage A, the unqualified word 'insured'

that tended to prove that this endorsement was regularly attached to limited commercial policies. Moreover, plaintiff offered evidence, introduced over defendant's objections, that both plaintiff and the owners intended to exclude coverage of renter pilots and that the lower premium that the owners paid reflected that fact. Plaintiff assigns as error that the court held that the binders insured Phelps, a renter pilot, and directed a verdict for the personal representative of the passengers' estates. Defendant made cross-assignments of error. We affirm.[5]

With exceptions not here applicable, an insurer must file its basic insurance policy and endorsements for approval with the Commissioner of Insurance. ORS 743.006. Before February 1, 1980, plaintiff had filed with the commissioner, and he had approved, its aircraft policy and endorsements AEE-51 through AEE-60, including endorsement AEE-52.[6] ORS 743.075 provides:

"(1)   Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable indorsements as are designated in the binder, except as superseded by the clear and express terms of the binder.

"(2)   Except as provided in subsection (3) of this section and ORS 746.195, within 90 days after issue of a binder a policy shall be issued in lieu thereof, including within its terms the identical insurance bound under the binder and the premium therefor."

Both the handwritten and typed applications expressly incorporated only endorsement AEE-53, but neither

---

includes the named insured and also includes any person while using the aircraft and any person or organization legally responsible for the use thereof, provided the actual use of the aircraft is by the named insured or with his permission."

AEE-52 limits this definition:

"The insurance with respect to any person or organization other than the named insured does not apply * * * while the aircraft is subject to any rental or lease agreement."

[5] Because we affirm the decision of the court, we need not consider defendant's cross assignments of error.

[6] The version of AEE-52 ("9/77") that plaintiff included with the policy was slightly different from the version on file with the commissioner ("8/74"), but the difference is not relevant here.

mentioned endorsement AEE-52 or any other endorsement nor expressly excluded renter pilots. Plaintiff argues, however, that, because it had attached endorsement AEE-52 to virtually every limited commercial hull and liability policy that it had issued, the endorsement was within the "usual terms of the policy as to which the binder was given * * *." ORS 743.075(1).[7] Accordingly, plaintiff argues that Phelps was not an "insured" and that the directed verdict was error.

Under ORS 743.075, however, the coverage under a binder is that specified in the policy on file with the commissioner as modified by designated endorsements "except as superseded by the clear and expressed terms of the binder." If plaintiff had wished to exclude a renter pilot as an "insured" under the binders, it should have either designated AEE-52 in the binders as an endorsement or by clear and express terms in the binders excluded a renter pilot as an "insured."[8] It did neither. Therefore, the unqualified definition of "insured" in the policy is controlling.

Plaintiff also argues that we must construe the binders to give effect to the intent of the contracting parties—the plaintiff and the owners who purchased the policy. The binders, however, were clear and unambiguous on their faces. If the coverage under the binders did not conform to the contracting parties' intents, plaintiffs proper remedy was reformation.[9]

Plaintiff argues that the handwritten and typed binders lapsed by their own terms on February 10, 1980. Accordingly, plaintiff argues that, at the time when the aircraft owner tendered payment on February 13, the underlying oral

---

[7] Plaintiff argues that, because the word "policy" as used in ORS 743.075(1) includes endorsements, the "usual terms of the policy" include the usual terms of the usual endorsements. The definition of "policy" in ORS 731.122, however, is applicable "[e]xcept where the context otherwise requires * * *." ORS 731.052. Because it is inconsistent with the words "together with such applicable indorsements" in ORS 743.075(1), the language of ORS 731.122, on which plaintiff relies, is not applicable to ORS 743.075(1).

[8] There was no evidence in the record that the contracting parties *expressly* excluded renter coverage orally. Accordingly, we need not consider the effect of an express oral modification of a written binder.

[9] Plaintiff relies primarily on the case of *Murley v. NW Pac. Indem. Co.*, 265 Or 49, 507 P2d 1145 (1973). However, the insurer there pled and proved the elements of reformation in its case-in-chief.

agreement of plaintiff and the owners determined coverage. We disagree. The evidence is undisputed that the parties reinstated the coverage specified in the applications when the owners paid the premium. Indeed, the owners included a signed copy of the typed application with their February 13 tender of the premium to plaintiff. Viewing the evidence most favorably to plaintiff, *see Brewer v. Erwin,* 287 Or 435, 454, 600 P2d 398 (1979), we find that the court was correct when it decided as a matter of law that the coverage in force at the time of the crash was described in the written binders and directed a verdict for defendant.

■     Plaintiff also assigns as error that the court denied its motion to amend the complaint to add a claim for reformation of the binders. Plaintiff made the motion after it had presented its full case-in-chief during two days of trial and before the court granted defendant's motion for a directed verdict.

ORCP 23B allows for amendment of pleadings to conform to proof:

> "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment * * *."

Plaintiff argues that the issue of reformation was tried by implied consent of the parties and that it should have been permitted to amend. Defendant, however, did not consent to trial on the issue of reformation. He objected to plaintiff's evidence of the contracting parties' intentions as irrelevant. Although the court admitted some evidence of their intent, the issue of intent was not thoroughly explored either on direct or cross-examination. There was also no evidence of other elements necessary to support a claim for reformation.[10]

Moreover, defendant would probably have been prejudiced by the amendment. It is apparent from the record that the court believed that defendant would have been prejudiced:

---

[10] For example, reformation based on mutual mistake requires that a plaintiff show it was not grossly negligent. Plaintiff made no such showing, and defendant did not have an opportunity to cross-examine plaintiff's witness on this issue.

Plaintiff's counsel said:

> "I also feel compelled to seek leave to amend our complaint to add a claim for reformation, to say that the insurance contract should be reformed to include the provision which both parties intended."

The court ruled:

> "You can't do that. You come into Court and try a lawsuit on one theory, and then completely change your theory? That's not fair. The reason we have pleadings is to give people some idea of what your theory is so they can prepare accordingly. I don't know what difference it would make in this presentation, but I am sure it would make some difference. And I think that I will not allow the amendment at this time."

The court did not abuse its discretion in denying plaintiff's motion to amend. *See Humbird v. McClendon,* 281 Or 83, 86, 573 P2d 1240 (1978); *Mondell v. Grant AMC/Jeep,* 75 Or App, 635, 707 P2d 637 (1985).

Affirmed.