Argued and submitted March 28, affirmed October 10, reconsideration denied November 28, 1990, petition for review denied February 5, 1991 (311 Or 150)

Genell MAYS,
*Appellant,*

*v.*

TRANSAMERICA INSURANCE COMPANY,
and Maryland Casualty Company,
*Respondents,*

*and*

SMITH & CRAKES INSURANCE, INC.,
Gladys Lewis, Henry Mays, Edward Lewis
and Velco, Inc.,
*Defendants.*

(16-88-01857; CA A61176)

799 P2d 653

Dan E. Neal, Eugene, argued the cause for appellant. On the briefs were Fern Eng and Neal & Eng, Eugene.

I. Franklin Hunsaker, Portland, argued the cause for respondent Transamerica Insurance Company. With him on the brief were Thomas A. Gordon, Lisa E. Lear and Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland.

James M. Johnstone, Washington, D.C., argued the cause for respondent The Maryland Casualty Company. With him on the brief were Richard H. Gordin, Frederick S. Ansell and Wiley, Rein & Fielding, Washington, D.C., and Roger K. Stroup and Bodyfelt Mount Stroup & Chamberlain, Portland.

Thomas H. Tongue, Michael J. Francis, John C. Cahalan and Dunn, Carney, Allen, Higgins & Tongue, Portland, filed a brief *amicus curiae* for League of Oregon Cities.

Thomas S. James, Jr., Donald S. Kunze, Richard Birmingham and Davis Wright & Jones, Seattle, Washington, filed a brief *amicus curiae* for Insurance Environmental Litigation Association.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff brought this action for breach of contract, seeking payment of claims under various general liability insurance policies for costs incurred in cleaning up environmental pollution. The trial court granted defendants Maryland Casualty Company (Maryland) and Transamerica Insurance Company (Transamerica) separate summary judgments pursuant to ORCP 67B. We affirm.

Plaintiff is the owner of real property in Eugene and, with her husband and her son was a shareholder in a closely held corporation, Velco, Inc., which had operated a paint manufacturing business on the property from 1965 to 1985. In 1985, after the death of plaintiff's husband, Velco was dissolved and its assets were sold to another corporation. The new owners have continued to operate the business on the property, which is leased from plaintiff.

Velco's operation generated waste consisting of used solvent, waste water and paint sludge. Beginning in 1969, Velco deposited the wastes on the property in an unlined pit dug for the specific purpose of holding them. Velco used the pit to deposit solvents until 1977 or 1978 and for water-based wastes until 1981. The site is now covered with a warehouse and a parking lot.

In 1986, the Department of Environmental Quality (DEQ) sent plaintiff a "Notice of Violation and Intent to Assess Civil Penalty," identifying the Velco property as a potential toxic waste site under state and federal laws. Investigation confirmed the presence of contaminants, and plaintiff entered into a consent order withgthe DEQ and the Environmental Protection Agency (EPA), pursuant to the Resource Conservation and Recovery Act (RCRA). 42 USC § 6901 *et seq.* The consent order requires her to remove, decontaminate and dispose of all contaminated soil and to monitor the level and movement of contaminants in the groundwater.

From September, 1972, through September, 1975, Velco was a named insured under Maryland's policy.[1] From

---

[1] The only policy in evidence at trial was for 1972-75 and includes a pollution exclusion clause. In her brief, plaintiff argues that there was an issue of fact as to whether Maryland had issued a policy before 1972 that would provide coverage. *See infra.* While the case was on appeal, Maryland moved to supplement the record with a pre-1972 policy, which it had recently discovered and which did not contain a pollution exclusion clause. We allowed the motion. The policy named Velco, but not plaintiff, as a named insured. Because we decide that plaintiff was not insured under either policy, the omission of the pollution exclusion in the pre-1972 policy does not change our analysis.

September, 1975, through September, 1986, Transamerica issued policies in which the named insureds included Velco and plaintiff. Plaintiff submitted claims under both policies for indemnification for the costs of complying with the consent order. Both defendants denied the claims.

We first address plaintiff's assignment of error relating to the summary judgment for Maryland. In the trial court, Maryland relied on several arguments, only one of which we need address on appeal. It argued that plaintiff was not covered under any policy that it issued. She was not a named insured, but she held one share in Velco. She contends that she was thus covered under the policy definition of other "persons insured":

> "Each of the following is an insured under this insurance to the extent set forth below:
>
> "* * * * *
>
> "(c)  if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such * * *."

Maryland contends that plaintiff was not covered, because her obligation for clean-up is based on her status as property owner, not as a Velco shareholder. Plaintiff counters that her liability arises in part due to her "duty" as a shareholder, because the consent order makes Velco liable as well as her personally. Her position is that, because Velco is defunct, she is responsible for its actions.

Shareholders normally enjoy limitation of liability for corporate activities. *Amfac Food v. Int'l Systems,* 294 Or 94, 96, 654 P2d 1092 (1982). Plaintiff's argument is the converse of the traditional effort to pierce the corporate veil in order to hold a defendant shareholder responsible. Here, plaintiff seeks to pierce the corporate veil in order to make herself responsible for corporate acts and thereby benefit from Velco's insurance. However, she would have to demonstrate that she has exercised the degree of control that could cause a shareholder to lose the usual limitation of liability. *See Amfac Food v. Int'l Systems, supra.*

■ Plaintiff claims that she could be held liable under the RCRA, which allows the EPA to take action

"against any person (including * * * any past or present owner or operator of a treatment, storage, or disposal facility) who has contributed or who is contributing to such handling, storage, treatment, transportation, or disposal * * *." 42 USC § 6973(a).

Liability for cleanup costs also may be imposed on the owner of a facility. 42 USC § 9607(a). Active participation or ultimate responsibility for the disposal of wastes is necessary to impose personal liability on a shareholder. *United States v. Northeastern Pharmaceutical,* 810 F2d 726, 745 (8th Cir 1986), *cert den* 484 US 848 (1987); *State of Vt. v. Staco, Inc.,* 684 F Supp 822, 835 (D Vt 1988). We agree with that conclusion, which recognizes the language of the statute and also comports with the common law rule that a shareholder's liability is based on the exercise of control. We conclude that plaintiff has not demonstrated that she exercised the requisite degree of control for liability under the RCRA.

■ The consent order was issued to Velco as well as to plaintiff, but it addresses plaintiff *only* in her capacity as landowner, *not* as a shareholder of Velco; on its face, it does not place liability on her for her activities done in the scope of her duties, if any, as a stockholder in the corporation. Also, the evidence shows no participation by her in corporate matters other than her passive participation as holder of one share. Her deposition testimony shows no involvement in the management of the business. She did not even know how the paint was processed or of the disposal procedure for the waste materials. She did not know that a pit had been dug for the waste until after it was paved over.

Plaintiff failed to show that she contributed to the disposal of the waste in any way that could make her liable for the corporate actions under the federal statute. Likewise, her lack of control over corporate affairs would preclude a loss of the shield from personal liability that she enjoys at common law. *See Amfac Food v. Int'l Systems, supra.* We conclude that plaintiff has not shown any shareholder duty that would give rise to liability and that, therefore, would be covered by the policy. It was not error to grant a summary judgment to Maryland.

We turn to plaintiff's argument that it was error to grant a summary judgment to Transamerica. The policies issued by Transamerica, under which plaintiff was a named insured, contained these clauses:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence.

"* * * * *

" '[O]ccurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured[.]"

The policies also contained a pollution exclusion clause, which was the standard one developed in 1970 by representatives of the insurance industry and excluded

"bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."

The clauses are identical to those that we considered in *Transamerica Ins. Co. v. Sunnes,* 77 Or App 136, 711 P2d 212 (1985), *rev den* 301 Or 76 (1986), in which the plaintiff insurer stipulated that its insured intended to discharge acids and caustic wastes into the sewer lines of the City of Hillsboro but did not intend to cause the resulting damage to the sewage system. The insured had discharged the wastes over a period of ten years. We held that the pollution exclusion clause applied because, although the damage was unintentional, it was not "sudden and accidental."

As in *Sunnes,* the parties here focus on the pollution exclusion provision. Plaintiff urges that *Sunnes* should be overturned. We decline. Plaintiff further seeks to distinguish *Sunnes* by arguing that the trend in recent cases that have considered identical provisions is to find an ambiguity in the policy as a whole, because it appears to cover a continuous discharge as an "occurrence" but then excludes continuous discharges under the pollution exclusion.

■ We find no ambiguity here. Ambiguity does not necessarily result because one clause provides coverage and another clause excludes that coverage under certain circumstances. Exclusions are intended to provide exceptions to general coverage. *See State Farm Fire and Casualty Co. v. Jones,* 86 Or App 584, 588, 739 P2d 1090 (1987), *rev'd on other grounds,* 306 Or 415, 759 P2d 271 (1988).

Plaintiff next urges that the facts here are distinguishable, because the insured in *Sunnes* deposited the wastes directly into a public disposal system, intending that they be carried off site, but here there is no evidence that the insured intended the waste to move into the groundwater under the facility. That distinction misses the point that we stressed:

> "The exception to the exclusion clause is concerned only with whether the discharge or release of pollutants is accidental or intended and not with whether the resulting damage was also intended. [The insured] clearly intended to discharge the pollutants, and its liability is therefore not covered by the insurance policies." *Transamerica Ins. Co. v. Sunnes, supra,* 77 Or App at 141.

The evidence is clear that Velco intended to release the pollutants into the waste pit as a regular part of its business operations. The pollution exclusion clause precludes coverage for plaintiff's costs incurred in cleaning up the contamination.

■ Plaintiff next argues that, under *Farley v. United Pacific Ins. Co.,* 269 Or 549, 525 P2d 1003 (1974), Transamerica is estopped from relying on the exclusion, because the agent who annually reviewed Velco's insurance needs visited the facility in 1977 and told the operations manager that Velco had adequate insurance to cover the risks associated with the disposal of hazardous wastes. In *Farley,* the insured wanted to insure a crane that he was moving from a mountainous area. He explained his needs to his agent, who told him that the crane was covered. After the crane tipped over and fell into a canyon, the insured learned that the written policy excluded coverage. The Supreme Court held that the agent had the ostensible authority to interpret the contract and that the insurance company was estopped from relying on the written policy.

Transamerica argues that, irrespective of whether

*Farley* applies to the situation here, plaintiff has failed to show that she knew about, and reasonably relied on, the representations made by the agent.[2] *Goddard v. Avenco Ins. Co.,* 43 Or App 39, 602 P2d 291 (1979). We agree. Plaintiff's liability for the clean-up was predicated on her status as landowner. Any representations made about pollution coverage were for Velco's actions. The evidence was that the agent reviewed Velco's insurance needs annually. He decided whether the insurance was appropriate to Velco's needs. The representations that he made were to Velco's operations manager. There was no evidence that plaintiff knew of the representations or that she relied on them and, therefore, failed to procure insurance that would have protected her in her capacity as landowner. Transamerica is not estopped from asserting the pollution exclusion clause.

Affirmed.

---

[2] Transamerica does not argue that, even if it is estopped from relying on the exclusion, there would be no coverage as a matter of law, because the instance giving rise to the loss was not an accident and therefore could not constitute an "occurrence" within the language of the policy. Transamerica does not challenge our language in *Transamerica Ins. Co. v. Sunnes, supra,* which arguably can be read to say that the pollution exclusion is not merely a restatement of the definition of an occurrence.