Argued and submitted April 5, reversed and remanded with instructions
October 9, 1996

Terry FLEMING,
*Respondent,*

*v.*

UNITED SERVICES AUTOMOBILE ASSOCIATION,
a foreign corporation,
*Appellant.*

(9312-08128; CA A86826)

925 P2d 140

Lisa E. Lear argued the cause for appellant. With her on the briefs were Jeremy E. Zuck and Bullivant, Houser, Bailey, Pendergrass & Hoffman.

Robert E.L. Bonaparte argued the cause for respondent. With him on the brief was Bonaparte, Elliott & Ostrander, P.C.

Before Deits, Presiding Judge, and De Muniz and Armstrong, Judges.

DEITS, P. J.

## DEITS, P. J.

Defendant, United Services Automobile Association, is the insurer of residential rental property of which plaintiff Fleming is a part owner. Plaintiff brought this action on the insurance policy after defendant refused coverage for chemical damage that resulted from the operation of a methamphetamine laboratory on the rented property. Defendant based its refusal, in part, on the "pollution exclusion" in its policy. *But see* note 1. The case was tried to a jury, which found that the exclusion did not defeat coverage and also made other special findings that were adverse to defendant.[1] Defendant appeals from the resulting judgment, and we reverse.

In its first three assignments of error, defendant contends that the trial court erred by denying its motions for judgment on the pleadings and for a directed verdict and by submitting to the jury "the question of the construction of [the] insurance contract." Defendant asserts, in each of the assignments, that the pollution exclusion is unambiguous and defeats coverage here as a matter of law.[2] Plaintiff answers that the exclusion is ambiguous and was properly submitted to the jury and that the jury's finding was consistent with plaintiff's understanding that the exclusion "applies only to predictable or preventable—*i.e.*, nonaccidental—damage from the discharge of pollutants." We agree with defendant that the exclusion is more comprehensive in its application and that it defeats coverage as a matter of law.

The policy covers "direct loss to [the] property * * * only if that loss is a physical loss to property." The pollution exclusion is included under the same policy heading as the

---

[1] Defendant has denied that the damage was caused by the laboratory operations and, notwithstanding the jury's contrary special finding, defendant devotes a substantial part of its statement of facts to us to the proposition that that was not the cause of the damage. As best we can tell, however, defendant does not return to that issue in any of its 14 assignments of error or supporting arguments. In his response, plaintiff points out, correctly, that there was evidence to support the jury's finding on causation and that defendant's statement fails to present the evidence in the light favorable to plaintiff, the party in whose favor the jury found.

[2] Because the assignment relating to the denial of the directed verdict is independently dispositive, we base our decision on it.

coverage provision and states that defendant does not insure losses caused by, *inter alia*,

> "discharge, dispersal, seepage, migration release or escape of pollutants.
>
> "Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed[.]"

Plaintiff relies on *Largent v. State Farm Fire & Casualty Co. (A71495)*, 116 Or App 595, 842 P2d 445 (1992), *rev den* 316 Or 528 (1993), and two later decisions that follow it. *Largent* involved facts materially similar to those here, and the question in it was whether coverage was eliminated by a "contamination exclusion," applying to losses "consisting of, or directly and immediately caused by,"

> "wear and tear; marring; deterioration; inherent vice; latent defect; mechanical breakdown; rust; mold; wet or dry rot; *contamination*; smog; smoke from agricultural smudging or industrial operations; settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floor, roofs or ceilings; birds, vermin, rodents, insects or domestic animals." (Emphasis supplied.)

We held that coverage was not eliminated by the exclusion, reasoning that the word "contamination," in the context of the exclusion and the policy as a whole, "applies only when contamination happens over time and is an independent and direct source of the loss." *Id.* at 598. Consequently, the "discharge of airborne vapor and particulates" that caused the loss in *Largent* did not come within the exclusion. *Id.* at 597. We placed significant reliance for our conclusion on the fact that the word "contamination" was surrounded in the exclusion by other terms, *e.g.*, "wear and tear," denoting gradual processes.

Defendant contends that the exclusion in its policy differs decisively from the one in *Largent*. Unlike the latter, defendant posits, its exclusion "stands alone" rather than being listed together with numerous other and different bases for denying coverage; and, more importantly, it contains a definition of "pollutants," which defendant understands as squarely encompassing the circumstances at hand.

In addition, defendant relies on *Transamerica Ins. Co. v. Sunnes*, 77 Or App 136, 711 P2d 212 (1985), *rev den* 301 Or 76 (1986), and *Mays v. Transamerica Ins. Co.*, 103 Or App 578, 799 P2d 653 (1990), *rev den* 311 Or 150 (1991). In those cases, we held that exclusions that were similar to the one here were unambiguous and prevented recovery, respectively, for waste discharge that included acids and alkalis, and for clean-up costs resulting from the discharge of solvents, wastewater and paint sludge.

Plaintiff answers that, when the totality of the policy is considered, it contains exclusions located in a variety of places that, taken together, are similar or equivalent to the ones listed in the single paragraph considered in *Largent*. Plaintiff concludes that the " 'pollution exclusion' is contextually identical to—and legally indistinguishable from—the similar 'contamination exclusion' " in *Largent*. However, two facts clearly distinguish the policy here from that in *Largent*. First, the location of the present exclusion in a separate paragraph from the others, in itself, makes it contextually different from and more independent of the other exclusions than was the surrounded word "contamination" in *Largent*. *See Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 470, 836 P2d 703 (1992). Second, and again more importantly, the single word "contamination" upon which the insurer in *Largent* relied does not communicate anything approximating the particularity of the exclusion here, with its definition of "pollutants" and its comprehensive listing of the means of pollution dissemination that the policy excludes from coverage. On its face, the exclusion at issue here clearly and unambiguously applies to the damage and means of damage that occurred: A loss caused by the discharge, dispersal, seepage, migration, release or escape of chemicals.

Plaintiff, however, looks beyond the face of the exclusion's language and argues that it is ambiguous in the context of the policy because, read literally, it would exclude coverage for events that the policy does—and perhaps must—cover. Plaintiff points in particular to fire coverage and notes that the pollution exclusion expressly excludes damage from smoke and soot. Seemingly, that argument *could* be answered by the truism that an *exclusion* does not create an

ambiguity simply by eliminating *coverage* that would otherwise exist. *See Mays,* 103 Or App at 585.

Perhaps unsurprisingly, however, defendant does not choose to rest on that proposition alone, *see* ORS 742.200 *et seq* (specifying requirements for fire insurance policies), but argues that any responsibility it has to cover fire-caused smoke, soot and the like arises from the "proximate cause" rule enunciated in *Gowans v. N.W. Pac. Indem. Co.,* 260 Or 618, 489 P2d 947, 491 P2d 1178 (1971). Unlike fire, defendant continues, the losses here are not subject to that rule, because no underlying covered event or intermediate effects following from such an event led to *this* pollution. As plaintiff argues, however, defendant's argument is unpersuasive because, in the absence of the pollution exclusion, there is little question that the losses here would come within the coverage provision of the policy as much as fire-related losses would.

Nevertheless, we are also unpersuaded by plaintiff's argument that any ambiguity created by the coverage and exclusion, as they bear on fire-related losses, is material here. We said in *Transamerica Ins. Co.*:

> "Culligan first argues that the policy exclusion is ambiguous, relying on *A-1 Sandblasting v. Baiden,* 53 Or App 890, 632 P2d 1377 (1981), *aff'd* 293 Or 17, 643 P2d 1260 (1982). In *A-1 Sandblasting,* we held that the term 'liquid' in the pollution exclusion clause did not clearly apply to paint accidentally dispersed while the plaintiff was painting a bridge. Finding that interpretation of the contract presented a question of fact, we reversed a summary judgment. The pollution exclusion clause is not ambiguous in the context of this case. Culligan released acids and alkalis which are specifically listed in the clause." 77 Or App at 139.

*See also Meyer v. American Economy Ins. Co.,* 103 Or App 160, 163, 796 P2d 1223, *rev den* 310 Or 547 (1990).

Similarly, here, the ambiguity, if any, in the context plaintiff discusses, does not carry over to this context. As applied in this context, the pollution exclusion is capable of only one plausible meaning, *see Hoffman Construction Co.,* which is the meaning espoused by defendant.[3] Under the

---

[3] Although the exclusion in this case is somewhat similar in other respects to the "pollution exclusion" that the Supreme Court held to be ambiguous in *St. Paul*

terms of the policy, plaintiff was not entitled to recover as a matter of law. The trial court erred in denying defendant's motion for directed verdict.

■      Plaintiff makes a cross-assignment of error in defense of the judgment. The pollution exclusion is included with the coverage provisions and a number of other exclusions under the heading "PERILS INSURED AGAINST." ORS 742.246 provides:

> "(1)   A fire insurer may add, to the provisions required by ORS 742.202, other conditions, provisions, and agreements not in conflict with law or contrary to public policy.
>
> "(2)   Any provision restricting or abridging the rights of the insured under the policy must be preceded by a sufficiently explanatory title printed or written in type not smaller than eight-point capital letters."

Plaintiff argues that, because the pollution exclusion does not appear under a title that identifies it as an exclusion, it violates that statute and can be given no effect.

We assume without deciding that the statute applies to other coverages that are included in a policy that insures against fire loss. Looking to the text and context of the statute, however, we disagree with plaintiff's premise that the legislative intent was to require all provisions that define coverage to be separately stated from and placed under a different heading from provisions that exclude coverage. The description of "perils insured" can take the form of both positive and negative provisions, and the difference between the two is often one of style or word choice. For example, under plaintiff's proffered construction of the statute, separate captions would not be required if the definition of coverage included the word "if" followed by positively phrased conditions, but would be if the definition included the words "but not" followed by the same conditions phrased negatively.

We note that "exclusion" and similar words are terms of art in insurance law. Had the legislature intended to subject all exclusions to the separate-caption requirement of

---

*Fire v. McCormick & Baxter Creosoting*, 324 Or 184, 212-16, 923 P2d 1200 (1996), it does not contain the language or anything resembling the language that the court concluded gave rise to the ambiguity there.

ORS 742.246(2), it could easily have said so in far clearer terms than the ones in which plaintiff tries to find that meaning. In the absence of such an expression by the legislature, it is not reasonable to read the statute as plaintiff does. We conclude that the placement of the pollution exclusion in the location and under the heading that defendant used was not contrary to the statute.[4]

The trial court erred by denying defendant's motion for a directed verdict. It is unnecessary for us to reach its remaining assignments of error.[5]

Reversed and remanded with instructions to allow defendant's motion for directed verdict and for further appropriate proceedings.

---

[4] We note that defendant's form of policy was approved by the Insurance Commissioner. The significance of regulatory approval, for purposes of statutes of the kind in question, has been treated differently in the case law of different jurisdictions. *See Annot.*, 36 ALR3d 464, 482-83 (1971). To the extent the question has been answered in this state, *Peterson v. State Farm Ins. Co.*, 238 Or 106, 393 P2d 651 (1964), suggests that the significance of the approval is quite limited.

[5] In its last assignment, defendant contests the amount of attorney fees that plaintiff was awarded. The award of attorney fees is automatically vacated by our reversal of the judgment.