Argued and submitted May 7, decision of Court of Appeals reversed and judgment of circuit court affirmed November 4, 1999, petition for reconsideration filed December 23, 1999, allowed by opinion March 3, 2000
See 330 Or 62 (2000)

Terry FLEMING,
*Petitioner on Review,*

*v.*

UNITED SERVICES AUTOMOBILE ASSOCIATION,
a foreign corporation,
*Respondent on Review.*

(CC 9312-08128; CA A86826; SC S44805)

988 P2d 378

William A. Drew, of Bonaparte, Elliott, Ostrander & Preston, P.C., Portland, argued the cause for petitioner on review. With him on the briefs was Robert E. L. Bonaparte.

Lisa E. Lear, of Bullivant Houser Bailey, Portland, argued the cause and filed the brief for respondent on review.

Christopher A. Rycewicz, of Rycewicz & Chenoweth, P.C., Portland, filed a brief for *amicus curiae* United Policyholders. With him on the briefs were Brian D. Chenoweth and Paul Desrochers and John A. MacDonald of Anderson Kill & Olick, P.C., Philadelphia, Pennsylvania.

James E. Horne, of Peery, Hiscock, Pierson, Kingman & Peabody, PS, Seattle, Washington, filed a brief for *amicus curiae* Insurance Environmental Litigation Association.

Phil Goldsmith, Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association. With him on the brief was David Nathan Allen, of Macpherson, Gintner, Gordon & Diaz, Newport.

William D. Okrent, of Holmes & Rickles, Portland, filed a brief for *amicus curiae* National Association of Independent Insurers. With him on the brief was John H. Holmes.

LEESON, J.

**LEESON, J.**

The issue in this case is whether plaintiff is entitled to insurance coverage for loss to his property caused by the clandestine operation of an illegal methamphetamine laboratory. A jury found that plaintiff was entitled to coverage. The Court of Appeals reversed. *Fleming v. United Services Automobile Assn.*, 144 Or App 1, 925 P2d 140 (1996). We allowed plaintiff's petition for review. The decision of the Court of Appeals is reversed. The judgment of the trial court is affirmed.

The facts are not contested. Plaintiff Terry Fleming and his wife own a 55 percent interest in residential rental property in Banks, Oregon. Plaintiff purchased a "Dwelling Policy" of insurance from United Services Automobile Association (defendant) for that property. The policy contains several sections, including "COVERAGES," "PERILS INSURED AGAINST," "GENERAL EXCLUSIONS," and "CONDITIONS." The section entitled "PERILS INSURED AGAINST" provides:

---

### "PERILS INSURED AGAINST"

---

"COVERAGE A — DWELLING and
"COVERAGE B — OTHER STRUCTURES

"We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property; however, we do not insure loss:

"1.  involving collapse, other than as provided in Other Coverages 10;

"2.  caused by:

"a.  freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

"(1)   maintain heat in the building; or

"(2)   shut off the water supply and drain the system and appliances of water;

"b.   freezing, thawing, pressure or weight of water or ice, whether driven by wind or not to a:

"(1)   fence, pavement, patio or swimming pool;

"(2)   foundation, retaining wall or bulkhead; or

"(3)   pier, wharf or dock;

"c.   theft of property not part of a covered building or structure;

"d.   theft in or to a dwelling or structure under construction;

"e.   wind, hail, ice, snow or sleet to:

"(1)   outdoor radio and television antennas and aerials including their lead-in wiring, masts or towers; or

"(2)   trees, shrubs, plants or lawns;

"f.   vandalism and malicious mischief, theft or attempted theft if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

"g.   constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

"h.   (1) wear and tear, marring, deterioration;

"(2)   inherent vice, latent defect, mechanical breakdown;

"(3)   smog, rust or other corrosion, mold, wet or dry rot;

"(4)   smoke from agricultural smudging or industrial operations;

*"(5)    discharge, dispersal, seepage, migration release or escape of pollutants.*

*"Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;*

"(6)    settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings; or

"(7)    birds, vermin, rodents, insects or domestic animals.

"If any of these cause water damage not otherwise excluded * * * we cover loss caused by the water * * *. * * *

"3.    excluded under General Exclusions.

"Under items 1 and 2, *any ensuing loss to property * * * not excluded or excepted in this policy is covered.*"

(Emphasis added.)

In 1991, plaintiff rented the property to tenants who operated an illegal methamphetamine laboratory at the residence. Chemicals that were released from the laboratory contaminated the residence with high levels of lead and mercury. In 1993, police officers seized from the residence equipment and chemicals used in manufacturing methamphetamine. The Oregon State Health Division declared the residence "unfit for use" and, during the time when the contamination was being cleaned up and debris was being removed, plaintiff could not rent the property.

Plaintiff submitted a claim to defendant. Defendant denied the claim, contending that plaintiff's loss was from pollution and that, under the pollution exclusion clause, quoted above, such losses are excluded from coverage.

Plaintiff then brought this action on the policy. Plaintiff moved for judgment on the pleadings on the ground

that the policy violated ORS 742.246(2)[1] because the pollution exclusion clause did not appear under a title that identified it as an exclusion. The trial court denied plaintiff's motion.

Defendant moved for a directed verdict, arguing that plaintiff had failed to meet his burden of proving that he had suffered a loss that was covered under the policy. The trial court denied defendant's motion and, as noted, the jury returned a verdict for plaintiff.

On appeal, defendant assigned error to the trial court's denial of its motion for a directed verdict. It argued that the pollution exclusion clause unambiguously excluded coverage for plaintiff's loss. Plaintiff cross-assigned error in defense of the judgment, arguing that the trial court erred in denying his motion for judgment on the pleadings on the ground that the policy violated ORS 742.246(2).

The Court of Appeals held that the pollution exclusion clause provided a "comprehensive listing of the means of pollution dissemination that the policy excludes from coverage." *Fleming*, 144 Or App at 5. It reasoned that, because plaintiff's loss was caused by the discharge, dispersal, seepage, migration, release, or escape of chemicals, the loss was excluded by the pollution exclusion clause. *Id.* The court also held that the title under which the pollution exclusion clause appeared—"PERILS INSURED AGAINST"—did not violate ORS 742.246(2) merely because provisions that appeared under that title described both what was and what was not covered under the policy. It reasoned that the description of "perils insured" could include both positive and negative provisions and that, if the legislature had intended to subject *all* exclusions in an insurance policy to the separate-caption requirement of ORS 742.246(2), then it could have done so "in far clearer terms" than it did. *Id.* at 7-8.

■ We first address plaintiff's argument that the title "PERILS INSURED AGAINST" violates ORS 742.246(2). That statute provides:

---

[1] The text of ORS 742.246(2) is set out below.

"Any provision restricting or abridging the rights of the insured under the policy must be preceded by a sufficiently explanatory title printed or written in type not smaller than eight-point capital letters."

Plaintiff argues that "PERILS INSURED AGAINST" does not explain that policy provisions that appear under that title—including the pollution exclusion clause—restrict or abridge the right to coverage. According to plaintiff, "PERILS INSURED AGAINST" is the section of the policy that purports to describe losses that *are* covered. The pollution exclusion clause restricts or abridges the right to coverage, but it is "hidden" in the section of the policy that describes coverage. Defendant responds that ORS 742.246(2) is not relevant in this case, because that statute applies only to provisions that restrict or abridge the rights of the insured, not to policy exclusions.

We begin our analysis by construing ORS 742.246(2). Our goal is to determine the intent of the legislature, which we do using the familiar methodology summarized in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). At the first level of analysis, we examine the text and context of the statute. *Id.* at 610-11. If the intent of the legislature is clear from the text and context, then our inquiry is at an end. *Id.*

■ ■ ORS 742.246(2) provides that *any* provision of an insurance policy that restricts or abridges the rights of an insured under the policy *must* be preceded by a sufficiently explanatory title that is printed or written in type of a specified size. "Any" in this context is synonymous with "every." *See Dickinson v. Leer*, 255 Or 274, 276-77, 465 P2d 885 (1970) ("any" adequate term to express "every"). "Must" in this context means that the requirements of the statute are mandatory. *See Fields v. Fields*, 213 Or 522, 528, 307 P2d 528 *on reh'g* 326 P2d 451 (1958) ("must" means mandatory). By its terms, ORS 742.246(2) applies to every provision of an insurance policy that restricts or abridges the rights of an insured.

■ The statute, however, does not define the terms "restricts" or "abridges." Because both are words of common usage, we give them their plain, natural, and ordinary meanings. *PGE*, 317 Or at 611. The dictionary definition of

"restrict" is "**1:** to set bounds or limits to \* \* \* **a:** \* \* \* RESTRAIN \* \* \*; *also*: HAMPER, DIMINISH \* \* \*." *Webster's Third New Int'l Dictionary*, 1937 (unabridged ed 1993). The dictionary defines "abridge" as "**1** \* \* \* **b:** to diminish (as a right) \* \* \*; **2:** \* \* \* shorten or cut down in extent \* \* \*." *Id.* at 6. Both words modify the phrase "rights of the insured." That phrase, in turn, refers to rights "under the policy." Because an insurance policy is a contract, an insured's rights under the policy depend on the policy itself. According to ORS 742.246(2), any provision of an insurance policy that diminishes, restrains, or limits the rights of the insured under the policy must be preceded by "a sufficiently explanatory title printed or written in type not smaller than eight-point capital letters."

■ ORS 742.246(2) does not define the term "sufficiently explanatory." However, the plain meaning of the word "explain" is to "make plain or clear." *Webster's Third New Int'l Dictionary* at 801. To be "sufficient," an explanation must be "marked by quantity, scope, power or quality to meet with the demands, wants, or needs of a situation \* \* \*." *Id.* at 2284. As used in the statute, then, the words "sufficiently explanatory" mean that the title must put the reader on notice that there are provisions appearing under the title that restrict or abridge the right to coverage, or other rights of the insured, under the policy. The statute also requires the title to be set out in capital letters of a particular size.

ORS 742.246(2) is worded broadly: *Every* provision of an insurance policy that restricts or abridges rights *must* be preceded by a sufficiently explanatory title of a particular size. That requirement reflects the legislature's intent that titles in insurance policies must be worded to assist purchasers of insurance in understanding their rights under the policy.

Defendant does not dispute the foregoing interpretation of ORS 742.246(2). According to defendant, however, an insured has the right to coverage for only the losses that remain covered *after* considering all exclusions and exceptions. Because an insured's "rights" under the policy are not known until all exclusions and exceptions have been identified, defendant contends, the statute is not relevant to the

section entitled "PERILS INSURED AGAINST." According to defendant, that section merely excepts or excludes losses from coverage rather than restricts or abridges rights under the policy. As we understand defendant's argument, the only title in its policy that *is* subject to the requirements of ORS 742.246(2) is "CONDITIONS," because that is the only section containing provisions that restrict or abridge the rights that are identified in other sections of the policy.

We disagree with defendant that the statute is not relevant in this case. The section "PERILS INSURED AGAINST" begins with the following statement: "We insure against risk of direct loss to property * * * if that loss is a physical loss to property * * *." The section thus begins by granting the right to coverage for direct physical loss to property. The grant of coverage then is qualified by the statement, "however, we do not insure loss * * *." The losses that are *not* insured against are exceptions to or exclusions from the broad grant of coverage given at the outset of "PERILS INSURED AGAINST." The exceptions to or exclusions from coverage that appear in that section restrict or abridge the right to coverage that is granted under the policy. Because the policy grants the right to coverage for direct physical loss to property, and then restricts that right, it is subject to the requirements of the statute.

Defendant argues in the alternative that, if ORS 742.246(2) is relevant, as we have concluded it is, then the title "PERILS INSURED AGAINST" satisfies the statutory requirements, because that title is "sufficiently explanatory" to put an insured on notice of the rights to coverage that are restricted or abridged by provisions that appear in that section. According to defendant, the title "PERILS INSURED AGAINST" explains that the risks that are covered under the policy are direct physical loss to property, unless the loss is of a type set out in that section. Defendant continues: "Simply because the statement that defines what perils are covered does so with both statements of inclusion and statements of exclusion does not mean that the heading is not explanatory."

We disagree. The section entitled "PERILS INSURED AGAINST" consists of two statements about what

the policy insures against, namely, "risk of direct loss to property described in Coverages A and B," and "direct physical loss to the property described in Coverage C * * *." Those statements are followed by almost two pages of losses that are *not* covered. As relevant to this case, the losses to dwellings and other structures that are not covered are of two kinds: qualified exceptions to coverage (described in subsection 1 and 2 a-g) and outright exclusions from coverage (described in subsection 2 h (1)-(7) and subsection 3). Even defendant refers to subsection 2 h (5) as the "pollution *exclusion* clause." (Emphasis added.) The title "PERILS INSURED AGAINST" does not explain that there are provisions in that section—including the pollution exclusion clause—that except or exclude the right to coverage under the policy. We hold that the exclusion on which defendant relies to deny coverage in this case appears under a title—"PERILS INSURED AGAINST"—that fails to comply with the requirements of ORS 742.246(2).

■    We next consider the remedy for that violation under the facts of this case. ORS 742.246(2) does not prescribe the remedy for violations of its provisions. However, ORS 742.038(2) provides:

> "Any insurance policy issued and otherwise valid which contains any condition, omission or provision not in compliance with the Insurance Code, shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy been in full compliance with the Insurance Code."

That statute requires courts to construe an otherwise valid insurance policy to bring the policy into full compliance with the Insurance Code. We have held that, under ORS 742.246(2), the title "PERILS INSURED AGAINST" does not explain that there are provisions appearing under that title that restrict or abridge an insured's right to coverage. The pollution exclusion clause, which limits the right to coverage, appears under that title, and defendant relied on that clause in denying coverage for plaintiff's loss. In this circumstance, construing the policy as though it did not contain the pollution exclusion clause is the most appropriate way to bring the

policy into compliance with the Insurance Code. So construed, plaintiff is entitled to coverage for the damage to his property caused by the presence or use of chemicals associated with a methamphetamine laboratory.

In light of our holding under ORS 742.246(2), we need not address plaintiff's argument that the Court of Appeals erred in holding that the pollution exclusion clause is unambiguous.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.