Argued and submitted June 12, affirmed October 15, 2003

## Darlene BAYLOR,
*Appellant,*

*v.*

## CONTINENTAL CASUALTY COMPANY,
an Illinois corporation,
*Respondent.*

### 0009-09426; A116609

78 P3d 108

Helen T. Dziuba argued the cause and filed the briefs for appellant.

Todd S. Baran argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiff Darlene Baylor appeals from a judgment entered in favor of defendant Continental Casualty Company on a breach of contract claim for nonpayment of benefits under an accidental death and dismemberment (AD&D) insurance policy. Defendant denied coverage upon the death of its insured, plaintiff's husband, invoking a policy exclusion for death resulting from being "under the influence of drugs unless taken as prescribed by a physician." On appeal, as before the trial court, plaintiff contends, principally, that (1) defendant was not entitled to enforce that exclusion because the AD&D policy, including the "drug use" exclusion, had never been filed with, and approved by, the Director of the Department of Consumer and Business Services (the director); and (2) alternatively, the exclusion was unenforceable because defendant never provided the insured with a copy of the policy that included the exclusion. We reject both of those contentions in the circumstances presented here and, consequently, affirm.

In the trial court, the parties agreed to a comprehensive stipulation of facts. Except as specifically noted, the following material facts are uncontroverted.

Defendant is an Illinois corporation that, at all material times, was authorized by the director to solicit, underwrite, and issue *individual* AD&D insurance policies to Oregon residents. Specifically, the director approved defendant's individual AD&D endorsement form, which included an exclusion for any loss resulting from "[b]eing legally intoxicated by alcohol or under the influence of drugs, unless taken as prescribed by a physician." However, defendant was not authorized to sell *group* AD&D insurance to Oregon residents—and, indeed, the director twice denied defendant's application to sell such coverage.[1]

In 1995, defendant, through an agent, offered to customers of Wells Fargo Bank $1,000 in free AD&D coverage,

---

[1] Defendant was authorized to sell group AD&D coverage in other states.

with the option of applying for additional low-cost AD&D coverage from defendant. Defendant expected to issue individual insurance policies to any Oregon resident who accepted that offer. In August 1995, plaintiff's husband, Robert Baylor, accepted the offer of $1,000 no-cost AD&D coverage. However, rather than issuing an individual insurance policy upon receiving Baylor's acceptance, defendant, by mistake, issued group insurance to him. Thereafter, Baylor applied for $100,000 in supplemental AD&D coverage, and defendant accepted that application, increasing Baylor's "group" coverage from $1,000 to $101,000.

On or about January 1, 1996, defendant issued a "certificate" memorializing that coverage. That document stated, in part, "This Certificate is not the Policy. It is merely evidence of insurance provided under the Policy." That certificate also stated that the policyholder was a third party, the Financial Services Association, and that the coverage was "subject to all the definitions, limitations and conditions of the policy." Although the parties agree that Baylor received the certificate, they dispute whether Baylor ever received the policy itself, with the "drug use" exclusion, or any other notice of the "drug use" exclusion.[2] In all events, plaintiff, by stipulation, admitted that

> "if he knew about the drug use exclusion in his AD&D policy, Mr. Baylor would not have canceled that policy. Nor would he have purchased, or tried to purchase, alternative AD&D coverage that was not subject to a comparable or equivalent exclusion."

Between January 1996 and November 1998, Baylor paid premiums for the AD&D coverage. On November 18, 1998, Baylor died from an overdose of illegal drugs.

Plaintiff, as one of the named beneficiaries, sought to recover under the policy, and defendant denied coverage under the "drug use" exclusion. Plaintiff brought this action in September 2000, alleging a single claim for breach of contract.

---

[2] As described below—and as the trial court recognized—resolution of that factual dispute is immaterial to the resolution of this case. *See* 190 Or App at 30 n 3.

The parties' dispute, as framed by their pleadings, focused on two overarching issues pertaining to the enforceability of the "drug use" exclusion. *First*, did the fact that the director had never approved defendant's group AD&D policy, including the "drug use" exclusion, render that exclusion unenforceable? *Second*, and alternatively, assuming that defendant failed to provide Baylor with a copy of the policy, including the "drug use" exclusion, would such a failure preclude defendant from invoking that exclusion?

The trial court, in separate rulings, resolved both of those issues in defendant's favor. First, relying on the parties' stipulated facts and *Gifford v. Western Aviation Ins. Group*, 77 Or App 645, 713 P2d 1085, *modified on recons*, 79 Or App 228, 718 P2d 777 (1986), the court addressed the effect of defendant's failure to obtain the director's approval:

> "Defendant mistakenly issued a group AD&D policy, rather than an individual policy, to Decedent. Neither the group policy, nor the endorsement containing the drug use exclusion, had been filed with and approved by the Director. However, Defendant was authorized to issue an individual AD&D policy in Oregon with the same or similar coverages, exclusions, and premiums.
>
> "Issuing the group policy, rather than the individual policy, did not prejudice Decedent or Plaintiff.
>
> "The drug use exclusion is not unlawful since nothing in Oregon law prohibits an insurer from excluding coverage under these circumstances. It was merely contained in a form not approved by the Director.
>
> "Considering the foregoing facts and the holding in *Gifford*, the endorsement containing the drug use exclusion is not void as a result of the failure to file it with and obtain the approval of the Director."

Thereafter, the court determined the effect of defendant's failure to provide a copy of the policy to the insured:

> "Assuming he did not receive notice that the [AD&D] policy that he purchased from defendant excluded coverage for death caused by the use of illegal drugs, [Baylor] was not harmed or prejudiced by any such lack of notice.

"* * * [T]he AD&D policy that [Baylor] purchased from defendant excludes coverage for death caused by the use of illegal drugs that were not prescribed by a physician. * * * [P]laintiff cannot avoid that exclusion without proving that Mr. Baylor was harmed or prejudiced by his alleged failure to receive notice of that exclusion. As a matter of fact, plaintiff cannot prove any such harm or prejudice."

Consequently, the court entered judgment for defendant.[3]

On appeal, the parties reiterate their substantive arguments to the trial court.[4] We begin by addressing the effect of defendant's failure to file, and to obtain the director's approval of, the group AD&D policy with the "drug use" exclusion. Plaintiff's contention that the lack of filing and director approval "voided" the exclusion rests on *Gifford*. However, *Gifford* holds precisely to the contrary—and, indeed, if plaintiff were correct, the logical extension of her reasoning would result in a "voiding" of not only the "drug use" exclusion, but also of the AD&D policy in its entirety.

In *Gifford*, the plaintiff sought insurance coverage for his aircraft. His broker obtained coverage from the defendant insurer, and the insurer issued a "binder,"[5] which contained no exclusion for Alaska travel. 77 Or App at 647. Thereafter, the insurer issued a policy with an endorsement purporting to exclude Alaska travel. However, the insurer had never filed that endorsement with the Oregon Insurance Commissioner, as required under *former* ORS 743.006(1) (1985), *renumbered as* ORS 742.003(1) (1989). After the issuance of the binder, and before the plaintiff received a copy of the policy, the plaintiff's plane crashed in Alaska. *Id.*

---

[3] The two rulings were rendered by two different judges. The first was issued several weeks before the scheduled trial date, and the second was rendered on the morning of trial before any additional evidence, beyond the parties' factual stipulation, was presented. Given its legal conclusions, the court determined that it was unnecessary to receive evidence on the disputed factual question of whether Baylor actually received the policy, or any other notice of the exclusion, because, as a matter of law, the resolution of that factual question was immaterial.

[4] In addition, plaintiff, for the first time, raises various procedural objections to the trial court's disposition of the case. We reject those contentions, which warrant no further discussion, as unpreserved or, alternatively, as partaking of invited error.

[5] The meaning of that insurance term of art is addressed below. 190 Or App at 33.

The procedural posture of *Gifford* was convoluted. For present purposes, it suffices to say that the trial court there determined that (1) the "failure to file the endorsement excluding coverage for Alaska renders it void," *id.* at 649; and (2) because the plaintiff had not yet received the policy at the time of the loss, he was entitled, under the so-called "binder statute," *former* ORS 743.075(1) (1985),[6] to enforce the terms of coverage as defined in the binder—*viz.*, coverage without the Alaska travel exclusion. 77 Or App at 650. In *Gifford*, we reversed the former ruling and affirmed the latter. We will return shortly to the "enforcement of the binder" aspect of *Gifford*. But, for now, what is pertinent is our holding as to the effect of an insurer's failure to file, and obtain the director's approval of, an endorsement with an exclusion, as required under *former* ORS 743.006(1) (1985).

Then, as now, that statute provided, in part:

"Except where otherwise provided by law, no basic policy form, or application form where written application is required and is to be made a part of the policy, or rider, indorsement or renewal certificate form shall be delivered or issued for delivery in this state until the form has been filed with and approved by the [director]."

In considering the effect of an insurer's noncompliance with that statute, we quoted with approval the following language from *Hall v. Metropolitan Co.*, 146 Or 32, 38, 28 P2d 875 (1934), where the court refused to void an annuity contract based on noncompliance with an analogous statute:

" 'The insurance code designates various penalties for violation of specific provisions thereof, and a general penalty for cases of violation not covered by specific penalties. There is nothing in the act itself to indicate that the legislature intended that even in cases covered by [the statute] failure to comply with the provisions of that section should render an insurance policy void. Such failure would not invalidate the policy but would subject the company issuing it to the payment of a fine.' "

*Gifford*, 77 Or App at 649 (quoting *Hall*, 146 Or at 38). We continued:

---

[6] In 1989, that statute was renumbered as ORS 742.043(1).

"The court's analysis [in *Hall*] applies to the filing of endorsements as well. Failure to file an endorsement does not render it void. If it did, insurers could refuse to pay claims if they had not filed the policy with the Insurance Commissioner on the ground that the policy was void. Such a result was not intended. * * * The legislature did not provide that unfiled policies and endorsements are void. *Failure to file the endorsement which excluded Alaska coverage did not create coverage for Alaska travel.*"

77 Or App at 649-50 (emphasis added).

■     So too here. Defendant's "failure to file the endorsement which excluded [coverage for deaths resulting from illegal drug use] did not create coverage [for deaths resulting from illegal drug use]." *Id.* at 650. Indeed, as *Gifford* suggests, if plaintiff's reasoning were correct, the insurer's noncompliance with ORS 742.003(1) would render not only the exclusion, but also the entire endorsement, void. Plaintiff cannot pick and choose. In all events, *Gifford* precludes either of those results.

■     We proceed then to plaintiff's alternative argument that, assuming (as the trial court necessarily did) that Baylor never received a copy of the policy with the exclusion, defendant's failure to provide a copy of that policy precluded enforcement of the "drug use" exclusion. As support for that proposition, plaintiff relies on ORS 742.046(1) and, again, *Gifford*.

ORS 742.046(1) provides:

"Subject to the insurer's requirements as to payment of premium, every policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance except where a condition required by the insurer has not been met by the insured."

Plaintiff acknowledges that neither that statute, nor any reported decision construing or applying that statute, states that noncompliance will preclude enforcement of any exclusion.[7] Nor can plaintiff plausibly dispute, given her explicit

---

[7] This case presents an entirely different issue than cases in which delivery of the policy is a condition of coverage. *See, e.g., Krause v. Washington Nat. Ins.*, 255

stipulation, that even if Baylor had received a copy of the policy with the "drug use" exclusion, he "would not have canceled the policy" or would have "purchased, or tried to purchase, alternative AD&D coverage that was not subject to a comparable or equivalent exclusion."

Rather, plaintiff's argument depends, again, on *Gifford*. In particular, plaintiff contends that (1) the only document Baylor received was the certificate of insurance; (2) that certificate was directly analogous to the binder in *Gifford*; and (3) because the certificate here, like the binder in *Gifford*, did not include the policy exclusion that the insurer ultimately invoked, the insurer's failure to provide a copy of the policy precludes enforcement of the exclusion.

Assuming, for the sake of our review, the correctness of plaintiff's first, factual premise, plaintiff's argument fails in its second premise. As a matter of law, the certificate that defendant issued here was not a "binder" or functionally analogous to a binder.

■ We return to *Gifford*. There, as noted, the defendant insurer had issued a binder that did not include any exclusion for Alaska travel. 77 Or App at 647. A "binder" is "a contract for temporary insurance until such time as issuance of permanent insurance is approved or disapproved or some other temporary impediment is removed." *United Pac. Ins. v. Truck Ins. Exch.*, 273 Or 283, 289-90, 541 P2d 448 (1975); *see also Black's Law Dictionary* 161 (7th ed 1999) (defining "binder" as "[a]n insurer's memorandum giving the insured temporary coverage while the application for an insurance policy is being processed or while the formal policy is being prepared"). In enforcing the terms of the binder in *Gifford*, we invoked the "binder statute," *former* ORS 743.075(1) (1985), which provided:

> "Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable indorsements as are designated in the binder, except as superseded by the clear and express terms of the binder."

Or 446, 468 P2d 513 (1970). It is undisputed that, in this case, no such provision was a part of the policy.

Applying that statute, we noted:

> "In construing insurance policies in Oregon, exclusion clauses are strictly construed against the insurer. The parties do not dispute that [*former*] ORS 743.075(1) created coverage for plaintiff because the Alaska exclusion was not included in the binder letter. In *Avemco Ins. Co. v. Hill*, 76 Or App 185, 708 P2d 640 (1985), we refused to allow an insurer to exclude coverage for renter pilots because that exclusion was not included in the binder. There, as here, the exclusion first appeared in the policy sent to the insured after the accident."

*Gifford*, 77 Or App at 650 (citation omitted). Thus, we concluded that the binder, which did not exclude Alaska travel, and not the policy, which the insured received only after the loss, defined the enforceable coverage for that loss. *Id.*

Here, the certificate did not evince some interim or temporary provision of insurance coverage, pending issuance of a final, formal policy. Indeed, by its own terms, the certificate states that it "is not the Policy" and otherwise refers to "the Policy." Unlike a binder, the certificate here—which was issued nearly three years before Baylor's death—simply embodied notice that defendant had issued a policy providing certain benefits in return for prescribed premiums. Thus, *Gifford*, with its fundamental reliance on the "binder statute," does not assist plaintiff.

Beyond plaintiff's explicit reliance on *Gifford* is a suggestion—or perhaps more than a suggestion—that insurance companies should not be able to "get away with this sort of thing." That is, that insurers should not be able to engage in "bait-and-switch" tactics, failing to disclose exclusions to both regulators and consumers and then, after accepting premiums, invoking them to avoid paying benefits.

■ We acknowledge, and do not discount, those concerns in the abstract. Putting aside the availability of administrative remedies and sanctions, in appropriate cases, estoppel may lie. *See, e.g.*, *Mays v. Transamerica Ins. Co.*, 103 Or App 578, 585-86, 799 P2d 653 (1990), *rev den*, 311 Or 150 (1991). But we need not decide that here, because this was not such a case.

Here, as noted, plaintiff stipulated that (1) the director had authorized defendant to write individual AD&D coverage with the same "drug use" exclusion; and (2) defendant's issuance of group coverage, instead of an individual policy, to Baylor was solely the result of a "mistake." Even more striking was plaintiff's stipulation that, even if Baylor had received notice of the exclusion, he would have maintained his policy with defendant and would not have purchased alternative coverage. As the trial court observed to plaintiff's counsel:

> "[W]ith all due respect, [that stipulation] seems to me to put you in a very difficult position, saying that essentially if the insured had known about this exclusion, he still wouldn't have gone out and got some other coverage with a different company.
>
> "* * * * *
>
> "[T]here's prejudice to the beneficiaries in the sense that they are not getting the pay-out that they had anticipated, but there's no prejudice to the insured because the stipulation says he wouldn't have done anything differently had he known."

The trial court was correct.

Affirmed.